**Thomas LOAN, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Donald J. Anderson, Thomas F. Bagley, Walter E. Bennett, Robert B. Bowen, Ernest N. Daulton, Jr., Robert E. Fitzgerald, Robert F. Fredo, Jr., Thomas J. Judy, Robert C. Keogh, Ralph Lolli, Jr., Gerard R. Martel, J. Parker Rice, Lester H. Rome, Eugene L. Sorbo, C. William Wester and Anthony F.S. Whitton, Defendants.**

Civ. A. No. 89–0251–T.

United States District Court,
D. Massachusetts.

Aug. 8, 1989.

---

Robert S. Potters, Potters & Sands, P.C., Boston, Mass., for Thomas Loan.

Brandon F. White and Michael Gaffney, Foley, Hoag & Eliot, Boston, Mass., for First Service Bank for Sav.

William J. Patton, Robert J. Stillman and David Martland, Ropes & Gray, Boston, Mass., for FDIC.

TAURO, District Judge.

This is the third in a series of lawsuits filed in federal and state court by shareholders of the First Service Bank for Savings following the disclosure of financial irregularities by federal and state banking examiners.[1] Plaintiff is the representative

---

1. The other cases pending in this court are: *Hurley, et al. v. FDIC, et al.,* CA No. 88–1969–T; and *Konstantinakos v. FDIC, et al.,* CA No. 88–2144–T. The following related cases are all pending in the courts of the Commonwealth: *Ashey, et al. v. First Service Bank for Savings,* CA No. 89–349 (Worcester Superior Court); *Feehan v. W.N. Investors Inc.,* CA No. 71844 (Fitchburg District Court); *First Service Bank for Savings v. Little, et al.,* CA No. 88–2303 (Worcester Superi-

or Court); *First Service Bank for Savings v. Wester, et al.,* CA No. 88–2292 (Worcester Superior Court); *Fredo, v. First Service Bank for Savings,* CA No. 88–3053 (Worcester Superior Court); *Mason v. Goutzos,* CA No. 88–7088C (Suffolk Superior Court); *Pelletier v. First Service Bank for Savings, et al.,* CA No. 89–0774 (Worcester Superior Court); *Tiernan, et al. v. Little, et al.,* CA No. 89–0657 (Worcester Superior Court); and *Zocco v. First Service Bank for*

of a putative class of the bank's shareholders who purchased shares in the bank's initial offering. Their purchases took place between July 9, 1986 and August 1, 1986, and were made pursuant to the terms of a Subscription Offering Circular. Named as defendants are: 1) the Federal Deposit Insurance Corporation;[2] 2) C. William Wester, the bank's former President, Chief Executive Officer and Chairman of the bank's board of directors; 3) Robert F. Fredo, Jr., the bank's former Senior Vice President and Senior Lending Officer; and 4) the bank's board of directors.

The complaint alleges that the defendants made material misrepresentations and omissions in the Subscription Offering Circular as well as in subsequently filed annual reports for 1986 and 1987. Each of the defendants are charged in a four count complaint with: 1) violation of § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*; 2) violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5; 3) com-

mon law fraud; and 4) negligent misrepresentation. All the defendants have moved to dismiss the complaint.

### I.

An essential element of both of plaintiff's securities claims is a misrepresentation or omission of a material fact. *See* 15 U.S.C. § 77*l*, 17 C.F.R. § 240.10b–5. No liability exists for either claim in the absence of an allegation that a particular statement was untrue, or that the statement failed to disclose a material fact.

■ Plaintiff relies on numerous representations which were made in the bank's Subscription Offering Circular.[3] *See Complaint* ¶ 35. These representations can be placed into four broad categories: 1) statements concerning the bank's lending practices, including the type of loans made, the risks associated with those loans and how the bank attempts to minimize those risks;[4] 2) financial data about the bank's activities during 1985 and early 1986;[5] 3)

*Savings*, CA No. 88–3188 (Worcester Superior Court).

2. Originally the bank was a defendant in this action. On March 31, 1989 the Massachusetts Commissioner of Banks took the bank over and appointed the FDIC to act as its liquidator. Subsequently, this court allowed the FDIC's motion to be substituted for the bank as a defendant. The FDIC, therefore, stands in the shoes of the bank in this litigation.

3. Although the complaint also makes reference to alleged misrepresentations and omissions contained in the bank's 1986 and 1987 annual reports, none of those subsequent statements can serve as a basis for liability in this case. Plaintiff purchased his shares during the summer of 1986. *See Complaint* ¶ 22. That was before either of the annual reports were issued. The purpose of § 12(2) "is to ensure that potential purchasers are given correct, material information *before* purchasing securities." *Quincy Co–Operative Bank, v. A.G. Edwards & Sons, Inc.*, 655 F.Supp. 78, 84 (D.Mass.1986) (Mazzone, J.) (emphasis added). Statements made after the securities have been purchased cannot form the basis for a § 12(2) claim. Similarly, § 10(b) and Rule 10b–5 require a challenged misrepresentation or omission to be "in connection with the purchase or sale of [a] security." *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5. *See also Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737–38, 95 S.Ct. 1917, 1926–27, 44 L.Ed.2d 539 (1975) (statements made subse-

quent to the purchase of shares are not actionable under Rule 10b–5). Accordingly, only those statements contained in the Subscription Offering Circular, discussed below, can form the basis for plaintiff's securities claims.

4. Paragraph 35(a) of the complaint is a representative example of statements that fit within the first category. It quotes the Subscription Offering Circular as stating: "A substantial portion of the Bank's lending involves construction, multi-family residential and commercial real estate lending. Construction, multi-family residential and commercial real estate loans ... may entail significant additional risks compared to single-family residential mortgage loans ... The Bank attempts to minimize those risks in a variety of ways, including lending primarily on property located in its market area and obtaining personal guarantees." *Complaint* ¶ 35(a) (ellipses in the original). The other representations that fit within this category are contained in paragraphs 35(f)-(j) of the complaint.

5. Paragraph 35(b) of the complaint is a representative example of statements that fit within the second category. It quotes the Subscription Offering Circular as stating: "The Bank emphasizes the origination of adjustable-rate residential and commercial real estate, construction and consumer loans. Such loans accounted for approximately 96% of the $145.1 million of loans originated by the Bank during the 15 months ended March 31, 1986 ... In general,

information about how banks are regulated by federal and state agencies;[6] and 4) information about how the bank will be affected by conversion from mutual ownership to stock ownership.[7]

Although the complaint quotes at length from the Subscription Offering Circular, it does little more than allege that each quoted section was a misrepresentation or omission of a material fact. The complaint does not even try to explain how any of the challenged statements were untrue. *See e.g., Complaint* ¶ 35(k) (one of the alleged material misrepresentations is the following statement, that is most obviously true: "Banks are extensively regulated under both federal and state law."). Merely claiming that a statement is untrue does not make it so. A plaintiff has an obligation to explain what is untrue about each of the challenged statements and cannot merely quote a statement and assert that it is untrue.

Plaintiff attempts to avoid his obligation to identify specific misrepresentations and omissions by alleging that "[t]he statements made in the Circular ... were [intended] ... to mislead ... [purchasers] into believing that ... [the bank] was a conservatively run banking institution tightly regulated ... [and was] in compliance with federal and state statues and all applicable regulations." *See Complaint* ¶ 36. The complaint then goes on to explain that this

impression was false because the bank was involved in numerous transactions that "violated state and federal banking law and good banking practices." *Id.* The complaint does not specify what these banking practices were, or when they occurred. Rather, the complaint simply focuses on how these practices were later allegedly misrepresented on the bank's annual reports for 1986 and 1987.

The complaint attempts to link the 1986 and 1987 annual reports to the Subscription Offering Circular by alleging that the Circular should have disclosed the inaccuracies in the annual reports. But the annual reports were not issued until after the Circular. Effectively, what plaintiff is trying to do is base his securities claims on reports which were issued after he bought his shares. He cannot rely directly on those reports. *See supra* at n. 3. And he cannot do so indirectly by alleging that misrepresentations on reports issued in 1987 and 1988 should have been disclosed in the Subscription Offering Circular which was issued in 1986.

 Plaintiff's complaint has failed to identify a single material fact contained in the Subscription Offering Circular that was untrue when made. Nor has plaintiff pointed to a specific material fact which the defendants failed to disclose. Accordingly, both of plaintiff's federal claims must be dismissed.

---

the Bank's asset quality has been consistently good. At March 31, 1986, the Bank's delinquent loans were only 1.01% of its total assets." *Complaint* ¶ 35(b) (ellipses in the original). The other representation that fits within this category is contained in paragraph 35(d) of the complaint.

**6.** Paragraph 35(m) of the complaint is a representative example of statements that fit within the third category. It quotes the Subscription Offering Circular as stating: "The Bank's deposit accounts ... are insured by the FDIC ... The FDIC issues regulations, conducts periodic examinations, requires the filing of report and generally supervises the operations of its insured banks ... Any FDIC-insured bank which does not operate in accordance with FDIC regulations, policies and directives may be sanctioned for non-compliance. Proceedings may be instituted against any FDIC-insured bank or trustee, director, officer or employee of such

bank who engages in unsafe and unsound practices, including the violation of applicable laws and regulations. The FDIC has the authority to terminate its insurance of accounts." *Complaint* ¶ 35(m) (ellipses in the original). The other representations that fit within this category are contained in paragraphs 35(e), (k) and (*l*) of the complaint.

**7.** Paragraph 35(c) of the complaint is a representative example of statements that fit within the fourth category. It quotes the Subscription Offering Circular as stating: "The net Conversion proceeds will provide the Bank with a larger capital base from which to expand and diversify its deposit taking, lending and investment activities, which may include greater participation in joint ventures or other equity participation in real estate development." *Complaint* ¶ 35(c). The other representation that fits within this category is contained in paragraph 35(n) of the complaint.

## II.

An alternative reason exists to dismiss the securities claims against each of the individual defendants, with the exception of the FDIC. These defendants argue that the § 12(2) claim should be dismissed because they were not "sellers" of the securities at issue. The § 10(b) claims should be dismissed, according to the individual defendants, for failure to particularize their role in the fraud alleged.

### A. § 12(2)'s Seller Requirement

Section 12(2) provides that "[a]ny person who ... offers or sells a security ... by means of a prospectus ... which includes an untrue statement of a material fact or omits to state a material fact ... shall be liable to the person purchasing such security from him." 15 U.S.C. § 77*l*(2). The Supreme Court has explained that § 12 only imposes liability on two classes of persons: those who actually transfer title to securities and those that "successfully solicit[ ] the purchase." *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 2079, 100 L.Ed.2d 658 (1988).[8] Collateral participants in the sale of securities cannot be held liable under § 12(2). *Id.* 108 S.Ct. at 2080.

Clearly none of the individual defendants transferred title to the securities—the bank performed that function itself. Nowhere in the complaint does plaintiff allege that any of the individual defendants played any part in soliciting the sale of the bank's securities. Indeed, they are not even alleged to have signed the Subscription Offering Circular. In the absence of any allegation in the complaint connecting the individual defendants to the sale of the securities, this court cannot conclude that they are sellers within the meaning of § 12(2). Accordingly, the § 12(2) claim must be dismissed against all the defendants except the FDIC.

### B. Pleading fraud with particularity

The individual defendants also contend that the § 10(b) claim against them must be dismissed for failure to allege their particular role in the fraud.[9] Rule 9(b), which is applicable to alleged violations of § 10(b), provides that "the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). Where multiple defendants are involved, each person's role in the alleged fraud must be particularized in order to satisfy Rule 9(b). *See Margaret Hall Foundation v. Atlantic Financial Management, Inc.*, 572 F.Supp. 1475, 1481 (D.Mass.1983) (Tauro, J.).

The complaint does not connect the allegedly false and misleading Subscription Offering Circular to any of the individual defendants. The complaint does allege that "the defendants caused [the Subscription Offering Circular] to be prepared and circulated." *Complaint* ¶ 33. This bare allegation is not enough to inform the individual defendants of what they are actually alleged to have done. None of the individual defendants are alleged to have actually prepared, signed or even read the Circular before it was issued. Accordingly, the individual defendants are being sued based on their status as directors and former officers of the bank rather than for any actual role they may have played in producing or circulating the Subscription Offering Circular. That alone is not a sufficient basis to impose liability pursuant to § 10(b). *See Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 119–20 (2d Cir.1982) (directors cannot be charged with securities fraud based on their status as directors alone).

---

**8.** Although *Pinter* involved a construction of § 12(1) of the Securities Act of 1933, it is clear that the holding applies with equal force to § 12(2). *See Pinter*, 108 S.Ct. at 2076 n. 20 ("The ... language that governs § 12(1) also governs § 12(2)."). *See also Mercer v. Jaffe, Snider, Raitt & Heuer, P.C.*, 713 F.Supp. 1019 (W.D.Mich.1989) ("Every appellate court that has considered the question has determined that *Pinter* applies to Section 12(2) claims.").

**9.** The individual defendants' briefs indicate that they believe the § 12(2) claims should similarly be dismissed for failure to plead fraud with particularity. Section 12(2), however, imposes liability based on a seller's negligence and does not require proof of scienter. Accordingly, Rule 9(b)'s particularity requirement does not apply to § 12(2) because no fraud must be alleged or proven. *See* T. Hazen, *The Law of Securities Regulation* § 7.5 at 203 (1985).

### III.

The only remaining claims in this case are based on the common law of Massachusetts. Once a federal court dismisses all the federal claims contained in a complaint, the court must decide whether it is prudent to continue to exercise its pendent jurisdiction over claims based exclusively on state law. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966) (pendent jurisdiction is discretionary). Where, as here, all the federal claims have been dismissed at an early stage in the litigation, respect for the parallel legal system existent in the state where the federal court sits favors dismissal of the remaining counts. *Id.* at 726, 86 S.Ct. at 1139. Accordingly, plaintiff's common law fraud and negligent misrepresentation claims are dismissed for lack of subject matter jurisdiction.

An order will issue.

### ORDER

For the reasons set forth in the accompanying memorandum, defendants' motions to dismiss counts I and II of the complaint, pursuant to Fed.R.Civ.P. 12(b)(6), and counts III and IV of the complaint, pursuant to Fed.R.Civ.P. 12(b)(1), are hereby allowed.

IT IS SO ORDERED.