Amy GREENSTONE, Plaintiff,

v.

CAMBEX CORPORATION, Joseph F. Kruy, Edward G. Hughes and Sheldon M. Schenkler, Defendants.

No. 91–10961–H.

United States District Court, D. Massachusetts.

Oct. 4, 1991.

Thomas G. Shapiro, Shapiro, Grace & Haber, Boston, Mass., for plaintiff.

John D. Donovan, Jr., Andrew C. Pickett, Ropes & Gray, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

This case involves a shareholders' class action brought by the Plaintiff Amy Greenstone on behalf of all persons, other than the defendants, who purchased common stock of Cambex Corporation ("Cambex") between November 1, 1989 and February 1,

1991 (the "class period"). The Defendant Cambex is a corporation which is primarily engaged in the design, development, manufacture, lease and sale of computer enhancement products, consisting of add-in memories and peripheral subsystems for IBM computers. The Defendant Joseph Kruy is, and was throughout the class period, Chairman of the Board, President, and Chief Executive Officer of Cambex. The Defendant Edward G. Hughes was Senior Vice President of Technical Operations of Cambex from November, 1986 to April, 1990. Since 1990, Mr. Hughes has been Senior Vice President of Technology of Cambex. The Defendant Sheldon Schenkler has been Vice President of Finance and Chief Financial Officer of Cambex since April, 1988.

The plaintiff brings an action for a violation of Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78a, *et seq.*, as well as a pendent state common law action for negligent misrepresentation. She alleges that the defendants made material misrepresentations and omissions in their press releases and filings with the Securities and Exchange Commission ("SEC") and annual and quarterly reports concerning Cambex's financial results. Such reports allegedly misrepresented the financial status of Cambex because they failed to disclose the fact that Cambex and the other defendants engaged in unlawful practices which influenced the revenues of Cambex.

The defendants' unlawful practices, to which the plaintiff refers, were the subject of a civil action brought by IBM against Cambex. In that civil action, IBM alleged that Cambex (1) installed Cambex components in place of IBM components in computer systems owned by IBM Credit Corporation ("IBM Credit") and leased to IBM Credit's customers, and (2) unlawfully used components removed by Cambex from those computer systems and leased or sold those components to other Cambex customers. Such wrongful practices were allegedly in violation of the lease agreements between IBM Credit and its lessees. On Friday, February 1, 1991, IBM Credit announced, after the close of trading, that it was suing Cambex for modification of IBM Credit's computers and for unlawful conversion of components from IBM Credit's computers. On Monday, February 4, 1991, the price of Cambex stock declined from $18.00 to $13.25 per share. On March 5, 1991 Cambex announced that it had settled the lawsuit brought by IBM and IBM Credit. Pursuant to the settlement, Cambex agreed to comply with the terms and conditions of IBM Credit's subleases, as well as to pay IBM $5,886,000 for the memory owned by IBM Credit that was previously sold or leased by Cambex.

In her Complaint, the plaintiff claims that specific statements made by Cambex relating to Cambex's revenues and income during the period of November 1, 1989 through February 1, 1991 are misleading. The plaintiff does not contend that the reported figures were inaccurate or false per se. Rather, she claims that

> Cambex's recognition of revenues from products unlawfully converted that were ultimately sold or leased, and from modification of computers owned by IBM Credit, resulted in a material inflation of Cambex's revenues and earnings and a false portrayal of its financial condition and liabilities, for at least the quarters ended August 31, 1989, June 2, 1990, August 31, 1990, and December 1, 1990, and the fiscal years ended August 31, 1989 and August 31, 1990.

The plaintiff further claims in her pleadings that the revenues and income were misleading because

> [T]hey omitted to reveal that Cambex engaged in the unlawful practices of improperly modifying IBM Credit's computers and of removing valuable memory and associated parts and components from IBM Credit's computers and releasing or selling those parts and components in competition with IBM and IBM Credit ... which improper and unlawful practices had a material effect upon Cambex's reported financial results and financial prospects.

The plaintiff asserts that such alleged "material inflation[s]," "false portrayal[s]" and misrepresentations violate Rule 10b-5 of

the Exchange Act and also constitute negligent misrepresentation. The defendant now moves to dismiss the Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

"It is well settled that [Fed.R.Civ.P.] 9(b) requires the plaintiff in a securities fraud case to specify the time, place and content of an alleged false representation." *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 878 (1st Cir.1991). "Although a plaintiff need not specify the circumstances or evidence from which fraudulent intent could be inferred, the complaint must provide some factual support for the allegations of fraud." *Id.* "A plaintiff must explain what is untrue about each of the challenged statements and cannot quote a statement and assert that it is untrue." *Haft v. Eastland Financial Corp.,* 755 F.Supp. 1123, 1129 (D.R.I.1991), quoting *Loan v. FDIC,* 717 F.Supp. 964, 967 (D.Mass.1989). Likewise, the complaint must describe how the "challenged statements are misleading." *Id.,* quoting *Konstantinakos v. FDIC,* 719 F.Supp. 35, 39 n. 7 (D.Mass.1989).

As a preliminary matter, this Court finds that the allegations contained in the plaintiff's complaint are vague and general. Although the complaint quotes with some specificity a number of statements, it fails to describe how such statements are false or misleading. After construing the complaint in the light most favorable to the plaintiff, *see Roeder v. Alpha Industries, Inc.,* 814 F.2d 22, 25 (1st Cir.1987), the complaint claims that various financial statements issued by the Defendant Cambex as to the revenue figures reported were false, not because the revenue figures themselves were not accurate, but rather that the source of some revenue was derived from unlawful practices, namely, the sale of "memory" components converted by the defendants, and that this misconduct was not disclosed and should have been. The failure to disclose the unlawful practices allegedly rendered the revenue figures

and other statements false and misleading in violation of Rule 10b–5.

Rule 10b–5 of the Exchange Act states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) to employ any device, scheme or artifice to defraud,

(b) to make any untrue statement of a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

*Roeder v. Alpha Industries, Inc.,* at 24, quoting 17 C.F.R. § 240.10b–5.

■ It is well established that even where certain information is material, "there is no liability under Rule 10b–5 unless there was a duty to disclose it." *Roeder v. Alpha Industries, Inc.,* at 26. "A duty to disclose 'does not arise from the mere possession of nonpublic market information.'" *Roeder v. Alpha Industries, supra,* at 26, quoting *Chiarella v. United States,* 445 U.S. 222, 235, 100 S.Ct. 1108, 1118, 63 L.Ed.2d 348 (1980). Such a duty does arise when (1) a statute or regulation requires disclosure, (2) a corporate insider trades on confidential information, or (3) when a corporation makes incomplete or misleading disclosures. *Id.* Otherwise, a corporation has no affirmative duty to disclose all material information. *Id.* at 27.

■ In her argument, the plaintiff carefully avoids claiming that the defendants had an affirmative duty to disclose their illegal business practices. Instead, she asserts that the defendants' duty to disclose their illegal practices arose under the first and third situations described in *Roeder v. Alpha Industries, supra.* More specifically, the plaintiff claims that the defendants failed to comply with the disclosure regulations of the SEC by materially overstating

Cambex's revenues and income and understating its liabilities. The plaintiff further claims that the statements made in the SEC filings were inaccurate, incomplete and misleading.

The plaintiff does not allege that the revenues actually received by Cambex differed from those reported to the SEC. Nor does she contend that Cambex did not experience the financial success described in its quarterly and annual reports. She argues instead that the reports would have been more accurate and complete if the defendants had revealed their improper activities because such activities allegedly influenced the financial success of Cambex. Beyond such vague references to the "false portrayal" of revenues, the plaintiff does not state how records and statements made by Cambex were false or inaccurate.

Certainly, the information about the defendants' improper activity was material insofar as "a reasonable investor might have considered [it] important in the making of [the investment] decision." *Roeder v. Alpha Industries, Inc.,* at 25; however, the materiality of information alone does not create a duty to disclose such information. The plaintiff cannot comply with the standards set out in *Roeder v. Alpha Industries, supra,* by merely describing defendants' reports and statements as to revenue as false and inaccurate. Regardless of how the plaintiff purports to characterize the undisclosed information (*i.e.,* about the defendants' improper activity) and its alleged influence on prior statements relating to revenue, she is, in reality, asserting that the defendants had an independent and affirmative duty to disclose the improper activity simply because it was material. Such a duty does not exist. *See Roeder v. Alpha Industries, supra; Backman v. Polaroid,* 910 F.2d 10 (1st Cir. 1990). As the defendants had no duty to disclose information about their illegal business practices, they cannot be liable under Rule 10b–5.

█ It appears that the complaint asserts that the plaintiff was misled not only by the defendants' false portrayal of their revenue but also by other statements made by the defendants. While the plaintiff quotes extensively from the defendants' reports and filings and suggests that such statements were misleading in the circumstances in which they were made, she fails to state with requisite specificity *how* any of the statements are misleading.[1] *See Haft v. Eastland Financial Corp., supra.* Without further specific allegations, the complaint fails to state a claim and must be dismissed.

Since the Court has dismissed the federal claim contained in the Complaint, it declines to exercise jurisdiction over the pendent state claim. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); 28 U.S.C. § 1367(c)(3).

WHEREFORE, the Court orders that Count I of the Plaintiff's Complaint be dismissed. The Court declines to exercise jurisdiction over Count II of the Plaintiff's Complaint.

SO ORDERED.

---

1. Near the conclusion of oral argument, in a belated attempt to circumvent the applicability of the *Roeder* case to the complaint, plaintiff asserted that Paragraph 26 of the Complaint and, more specifically, "the company also sells or leases trade-in memory which it acquires from its customers when this memory is replaced by new memory," contained a misrepresentation or omission which would preclude the granting of Defendants' Motion to Dismiss.

This argument fails because the quoted phrase is literally true, is nowhere alleged to constitute an omission with the particularity required of a fraud allegation under Fed.R.Civ.P. 9(b), and was never intended by the plaintiff to form the basis for her complaint, as the class period alleged, beginning November 1, 1989 relates to defendants' improper conduct of selling IBM Credit's property, and not to November 11, 1990, the date of the alleged false statement or omission set forth in Paragraph 26. The Court notes that the defendants' representation contained in Paragraph 26 was the only one to which the plaintiff referred at oral argument as specifically constituting a false statement or omission.