Marc **FEINER**, M.D., et al., Plaintiffs,

v.

**SS & C TECHNOLOGIES,
et al., Defendants.**

No. CIV.A. 3–97–CV–00656(JCH).

United States District Court,
D. Connecticut.

March 30, 1998.

Andrew M. Schatz, Schatz & Nobel, Hartford, CT, I. Stephen Rabin, Rabin & Peckel, New York, NY, for Marc A. Feiner, M.D., Joseph Aogiere, Arthur Davis, Theodore S. Davis, James Gragory, Brian Kreidler, Daniel Kreidler, Robert Q. Miller, Gilda Shapiro Trust, Majory G. Montagna, Elery G. Montagna.

William H. Prout, Jr., Wiggin & Dana, New Haven, CT, John F. Batter, Hale & Dorr, Boston, MA, for SS&C Tech, Inc., John S. Wieczorek, Shane A. Chalke, John Clinton, William Ford, William C. Stone, Peter L. Bloom, David Clark, Joseph Fisher, William Wyman.

Jack Auspitz, Morrison & Foerster, New York, NY, Steven D. Ecker, Cowdery & Ecker, Hartford, CT, for Alex, Brown & Sons, Hambrecht & Quist LLC.

### *RULING ON MOTIONS TO DISMISS*

HALL, District Judge.

In this case, Mark Feiner and other class representatives (collectively "Feiner") who purchased stock in Defendant SS & C Technologies between May 31 and August 1, 1996, bring this class action under Sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k(a) and 77o (1994) and Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2) (1994). The Consolidated Amended Class Action Complaint ("complaint") alleges misrepresentations and omissions in connection with an initial public offering of shares in SS & C Technologies (hereinafter "SS & C"), a Connecticut corporation that provides customized software and consulting services to the financial services industry. The defendants in the action include SS & C; nine of SS & C's officers and directors; and SS & C's two lead underwriters, Alex, Brown & Sons and Hambrecht & Quist. Defendants ask that the court dismiss the plaintiffs' complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for failure to plead fraud with particularity under Federal Rule 9(b). For the reasons that follow, the court denies the motions to dismiss.

## I. BACKGROUND

Plaintiffs purchased shares of SS & C common stock between May 31, 1996 and August

1, 1996. (Compl. ¶ 1). After filing its Registration Statement and a Prospectus with the Securities and Exchange Commission, SS & C made an initial public offering (IPO) of 3 .75 million of its common stock at $19.00 per share beginning May 31, 1996.[1] (*Id.* ¶ 1). On August 1, 1996, SS & C announced lower revenues for its second quarter ending June 30, 1996, than it had experienced in its first quarter. (*Id.* ¶ 4). On August 2, 1996, the day the class period ended for this action, SS & C stock traded at $9.25 per share. (*Id.* ¶ 4). In December 1996, at the end of the fiscal year, SS & C announced an increase in its bad debt allowance from approximately $500,000 at the time of the IPO to approximately $1 million. (*Id.* ¶ 4) On April 8, 1997, when plaintiffs filed this action, shares of SS & C common stock closed at $5.325 per share. (*Id.* ¶ 4).

In the consolidated complaint, the plaintiffs assert three bases for relief. Count I alleges violations of Section 11 of the Securities Act of 1933 by all of the defendants. Count II alleges violations of Section 12(2) of the Securities Act of 1933 by the two lead underwriters. Count III alleges violations of Section 15 of the Securities Act of 1933 by three individual officers and/or directors who signed the Registration Statement.[2] All of the claims rest on plaintiffs' allegations that the Prospectus filed in connection with the May 1996 offering contained materially false statements or omissions. The defendants insist that the complaint should be dismissed under Rule 12(b)(6) because each alleged misstatement or omission identified by the plaintiffs is immaterial as a matter of law.

## II. MOTION TO DISMISS UNDER RULE 12(b)(6)

### A. Standard

In deciding defendants' Rule 12(b)(6) motions to dismiss, the court accepts

---

1. The Prospectus was included as part of the Registration Statement filed with the SEC. Both documents are collectively referred to herein as the "Prospectus." Citations are to the copy of the Prospectus attached as Exhibit A to Doc. # 33 (the Appendix to the SS & C Defendants' Memorandum in Support of its Motion to Dismiss).

2. Section 15 imposes derivative liability upon persons who "control" those liable under §§ 11 or 12. *See* 15 U.S.C. 77o. Therefore, the motion to dismiss by the SS & C defendants, against whom the plaintiffs bring a § 15 claim, only addresses plaintiffs' §§ 11 and 12(2) claims.

as true the material facts alleged in the complaint and draws all reasonable inferences in plaintiffs' favor. See *Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir.1995) (citing *Hill v. City of New York*, 45 F.3d 653, 657 (2d Cir.1995)).[3] Dismissal of a complaint under the Rule is inappropriate unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *I. Meyer Pincus & Associates v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir.1991).

### B. Elements of §§ 11 and 12(2) causes of action

█ Section 11 provides that any signer of the registration statement, officer of the issuer, or underwriter may be held liable to purchasers of registered securities if "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. §§ 77k(a). In *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381–82, 103 S.Ct. 683, 686–87, 74 L.Ed.2d 548 (1983), the Supreme Court explained:

> Section 11 of the 1933 Act was designed to assure compliance with the disclosure provisions of the Act by imposing stringent standards of liability on the parties who play a direct role in a registered offering.... Liability against the issuer of a security is virtually absolute, even for innocent misstatements.... Although limited in scope, § 11 places a relatively minimal burden on a plaintiff....

A plaintiff can establish a prima facie case under Section 11 by demonstrating that the plaintiff purchased the security and that the registration statement contains false or misleading statements concerning a material fact. *Id.*

█ Similarly, § 12(2) imposes liability for using a prospectus or registration statement "which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading." 15 U.S.C. § 77*l*(2) (1994). The cause of action can be brought by a purchaser against any person who offers or sells the security.

In *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976), the Supreme Court held that an omitted fact is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* at 449, 96 S.Ct. 2126. This definition of materiality has been applied by courts in this circuit to claims arising under §§ 11 and 12(2). *See, e.g., Kronfeld v. Trans World Airlines, Inc.*, 832 F.2d 726, 731 (2d Cir.1987) (definition applied to § 11 claim); *In re TCW/DW North American Government Income Trust*, 1997 WL 727487 (S.D.N.Y.1997) (definition applied to §§ 11 and 12(2) claims); *Geiger v. The Solomon–Page Group*, 933 F.Supp. 1180, 1184 (S.D.N.Y.1996) (definition applied to §§ 11 and 12(2) claims).

█ The materiality element, common to plaintiffs' §§ 11 and 12(2) claims, forms the focus of defendants' motions to dismiss.[4] Defendants insist that the complaint fails as a matter of law to establish that defendants, in connection with the registration statement or prospectus, made a material misstatement or omission. Apart from the merits of defendants' arguments, defendants' task in these motions to dismiss is a difficult one for two related reasons. First, the materiality of a

---

3. This circuit allows documents publicly filed with the SEC to be considered at the pleading stage of a lawsuit brought under the securities laws. *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir.1991); *In re AnnTaylor Stores Sec. Litig.*, 807 F.Supp. 990, 993 n. 3 (S.D.N.Y.1992) ("This court may consider the Prospectus in this motion to dismiss because it is a public record filed with the SEC,

and also because it is referred to and quoted extensively in the Complaint.").

4. Because the motions to dismiss (and hence the court's analysis) are predicated on the materiality requirement, which is common to all the causes of action alleged by the plaintiffs, the court does not distinguish in its discussion between the various securities law provisions that the plaintiffs invoke.

statement is usually a question for the fact finder. *TSC Indus.*, 426 U.S. at 450, 96 S.Ct. at 2133; *Mendell v. Greenberg,* 927 F.2d 667, 673 (2d Cir.), modified on other grounds, 938 F.2d 1528 (2d Cir.1990); *Kronfeld,* 832 F.2d at 734–36. Thus, although not impossible, it is unlikely that a cause of action which requires a determination of materiality can be dismissed as a matter of law. "[A] complaint may not properly be dismissed pursuant to Rule 12(b)(6) ... on the ground that the alleged misstatements or omissions are not material unless they are *so obviously unimportant* to a reasonable investor that reasonable minds could not differ on the question of their importance." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985) (emphasis added).

Second, in order to prevail in their motions, defendants must convince the court that *each* allegation made by the plaintiff is immaterial as a matter of law. Put differently, if plaintiffs have alleged a single misstatement that can not be deemed immaterial as a matter of law, the action survives these motions to dismiss. Therefore, rather than assess the materiality of each allegation, the court need only determine whether plaintiffs have alleged at least one omission or misstatement in the Prospectus that can not be deemed immaterial as a matter of law. For the reasons given below, the court finds that the plaintiffs have stated a claim against all defendants under § 11, against the defendant underwriters, Alex, Brown & Sons and Hambrecht & Quist, under § 12(2), and against the individual SS & C defendants under § 15 of the Securities Act of 1933.

### C. Plaintiffs have alleged misstatements or omissions that are not immaterial as a matter of law.

■ Plaintiffs' revenue-related allegations center on the way in which SS & C sells its products and services to its customers.[5] A "sale" by SS & C consists of a signed license agreement (licensing the use of SS & C's software) or an agreement for consulting services. SS & C then engages in a process of customizing its products or services to the customer's data and systems. (Compl.¶ 30d). After the customization process is substantially complete (which requires "months or years"), the customer is obligated to pay for the purchase. (*Id.* ¶ 31). A dissatisfied customer can reject the product during this customization process—that is, well after the time at which SS & C recognizes revenues on the sale. (*Id.* ¶ 32).

According to plaintiffs, SS & C recognized revenue on the license or service agreements at the time an agreement was signed, contrary to statements in the Prospectus that the revenue would be recognized only when SS & C's obligations to the customer were substantially satisfied. (Compl.¶ 31, 35, 36). In particular, plaintiffs allege that SS & C overstated revenues and earnings in 1995 and the first quarter of 1996 in the Prospectus by recognizing revenue for which: (1) substantial obligations were owed to the customers before SS & C would receive payment; and (2) substantial uncertainty existed concerning SS & C's ability to complete those obligations, and thus receive payment. (Compl.¶ 32, 36–39, 41). Plaintiffs contend that in fiscal year 1995 customers were "delayed" in accepting (and thus paying for) SS & C products because of the Company's inability to provide appropriate product modifications. (*Id.* ¶ 36).

Defendants explain that the Prospectus provided adequate warning concerning the nature of SS & C's sales. The "Risk Factors" section of the Prospectus contains the following:

> The timing, size and nature of individual license transactions are important factors in the Company's operating results. Many such license transactions involve large dollar amounts, and the sales cycles for these transactions are often lengthy and unpredictable. There can be no assurance that the Company will be successful in closing large license transactions on a timely basis or at all.

(Exhibit A of Doc. # 33, p. 6). Defendants argue that the prospectus thus provided "ex-

---

**5.** These facts, taken from the complaint, are assumed true for purposes of these motions to dismiss and all reasonable inference are drawn in the plaintiffs' favor. *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,* 32 F.3d 697, 699 (2d Cir.1994).

press and specific notice to potential investors that the timing of . . . transactions could affect future performance." (Doc. # 32, p.6). However, this warning provides specific notice concerning SS & C's ability to "close" sales or transactions while plaintiffs' allegations relate to SS & C's ability to satisfy its post-"closing" obligations. Defendants could argue that the phrase "closing large license transactions" refers to the end of the customization process and not, as plaintiffs suggest, to the point at which SS & C signed its licensing agreements and recognized its revenues. The reasonableness of such an interpretation is undermined, however, by the references to "sales cycles" and "purchases" contained in the paragraph. In sum, this warning is not so precise and obvious that it renders plaintiffs' allegations unactionable as a matter of law.

Defendants reference another part of the "Risk Factors" section of the Prospectus which warns that customization of SS & C products could "delay the delivery or installation of products which, in turn, could materially adversely affect . . . [the Company's] business, financial condition, and results of operations." (Exhibit A of Doc. # 33, p. 8). Again, this disclosure does not speak to any adverse impact on historical revenues figures or other financial statements. Rather, the disclosure is forward-looking, warning of the possibility of future adverse consequences of delays in product delivery on business deals. It fails to counter plaintiffs' allegations sufficiently to support a determination, as a matter of law, that the defendants' alleged omission concerning the impact of delays on historical financial statements was not misleading. *See Rubinstein v. Collins*, 20 F.3d 160, 171 (5th Cir. 1994) (reiterating the view that " '[t]o warn that the untoward may occur when the event is contingent is prudent; to caution that it is only possible for the unfavorable

events to happen when they have already occurred is deceit.' ") (footnote omitted).

 Defendants repeatedly suggest that the absence of an action or event in the post-offering period amounts to dispositive evidence that the Prospectus was not misleading because, if the Prospectus was in fact misleading in the ways plaintiffs contend, the event should have occurred. For example, defendants label plaintiffs' revenue-related allegations as immaterial as a matter of law because "the historic earnings reported in the Prospectus . . . were never reversed or restated for any reason, much less because there were 'delays' in product acceptance." (Doc. # 32, p. 8). This reasoning disregards a fundamental principle in securities law analysis: the statements in a Prospectus are to be judged as of the effective date of the offering. *See* 15 U.S.C. § 77k(a). *See also* 3A Harold S. Bloomenthal, Securities and Federal Corporate Law § 8.23, at 8–102 (1993) ("[T]he prospectus for purposes of section 11 speaks as of the date the registration statement becomes effective."). Whether SS & C ultimately collects all of the revenue reported in the Prospectus does not determine the lawfulness of its disclosure. The fact that actual results that *may* suggest that the undisclosed or misstated risk was not realized does not in turn yield the conclusion that the risk was immaterial as a matter of law.[6] *Pommer v. Medtest Corp.*, 961 F.2d 620, 623 (7th Cir.1992) ("The securities laws approach matters from an *ex ante* perspective: just as a statement true when made does not become fraudulent when things go unexpectedly wrong, so a statement materially false when made does not become acceptable because it happens to come true."). Moreover, the fact that SS & C has not elected to restate or reverse its earnings or revenue figures for 1995 and 1996 does not indicate, much less prove, the accuracy of those figures.[7]

---

6. Additionally, the defendants necessarily rely on "facts" outside the pleadings in support of this argument. Material that is extraneous to the pleadings may not be considered in a 12(b)(6) motion unless the motion is converted to one for summary judgment under Rule 56. *See* Fed. R.Civ.P. 12(b).

7. Relately, defendants argue that plaintiffs' claim must fail as a matter of law because plaintiffs failed to allege that "a delay in acceptance actually did affect revenue, liquidity, or bad debt between the date of the IPO and the end of the class period." (Doc. # 32, p.10). Defendants offer no support for the view that the impact of

In sum, plaintiffs have asserted that defendants made material misstatements or omissions concerning SS & C's 1995 and 1996 revenue figures. Even when viewed in light of the risk disclosures and in the absence of any restatement of those figures, these allegations are not "so obviously unimportant to a reasonable investor" that they are immaterial as a matter of law. In other words, whether these allegations are material is a question of fact not properly resolved in a motion to dismiss.[8]

**D. The allegations concerning Alex, Brown are not as a matter of law unactionable.**

■ Although the allegations examined above provide sufficient basis to deny the motions to dismiss, the court will briefly address the "pricing" claims which defendants attack with considerable fervor. Without accepting, as plaintiffs argue, that the Qualified Independent Underwriter ("QIU") had a duty to set a "fair and reasonable" price, or that, as defendants suggest, the plaintiffs' claims transform the QIU's liability into a guarantee or warranty of price, and after drawing all reasonable inferences in plaintiffs' favor, the court finds that the complaint states a claim concerning "pricing."

The Prospectus can be read to represent that: (1) Alex, Brown & Sons, as QIU, undertook due diligence and recommended a maximum price that was equal to or greater than the $19 offering price; (2) Alex, Brown's recommended price was the result of consideration of all the identified factors, including "prevailing market conditions;" and (3) that the "prevailing market conditions" factor, while focused on the likely demand for the new issuance, necessarily involved broader considerations of market conditions.

Plaintiffs appear to allege that Alex, Brown did not or could not have done a (nonnegligent) due diligence without uncovering the alleged material misrepresentations and omissions in the Prospectus. *See* Complaint

¶ 58(d)(ii). Further, plaintiffs seem to allege that Alex, Brown & Sons' maximum recommended price was not $19 or more. *See id.* ¶¶ 59 and 60 (price increased above "initially recommended price"). Finally, plaintiffs make various allegations that the $19 price was "solely" a function of what the market would bear, *id.* ¶ 64. If true, the statement in the Prospectus concerning consideration of various other factors would be a misrepresentation. Prospectus at 57 ("among the factors considered ..."). Thus, it cannot be said that the plaintiffs failed to *state* a claim as a matter of law with regard to Alex, Brown & Sons and the QIU pricing process.

**III. Dismissal under Rule 9(b)**

■ Defendants request the court to dismiss the complaint for failure to comply with the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. The Rule requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Defendants urge the court to follow those courts that have applied Rule 9(b) to claims brought under §§ 11 and 12(2) of the Securities Act of 1933 when the claims are determined to be "grounded in fraud." *Melder v. Morris,* 27 F.3d 1097, 1100 n. 6 (5th Cir.1994); *In re Stac Electronics Securities Litigation,* 89 F.3d 1399, 1404–05. *Accord, Shapiro v. UJB Financial Corp.,* 964 F.2d 272, 288 (3d Cir.), *cert. denied,* 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992); *Sears v. Likens,* 912 F.2d 889, 892–93 (7th Cir.1990).

In *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993), the Court explained:

Rule 9(b) does impose a particularity requirement in two specific instances. It provides that "[i]n all averments of fraud or mistake, the circumstances constituting

---

their alleged misstatements must be realized prior to the end of the class period.

**8.** In light of this conclusion, the court declines to address the materiality of every allegation in the

complaint. To do so would *sua sponte* convert defendants' motions to dismiss into motions to strike.

fraud or mistake shall be stated with particularity." Thus the Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions. *Expressio unius est exclusio alterius.*

The Court held that federal courts may not apply the heightened pleading standard of Rule 9(b) outside the two specific instances—fraud and mistake—explicitly found in the Rule. The elements of a claim under § 11 or § 12(2) do not include fraud. Under those sections of the Securities Act, Congress imposed "liability without proof of either fraud or reliance on 'those whose moral responsibility to the public is particularly heavy'—the 'originators of securities.'" *Gustafson,* 115 S.Ct. at 1073 (quoting H.R.Rep. No. 85 at 9). "It is understandable that Congress would provide buyers with a right to rescind, without proof of fraud or reliance, as to misstatements contained in a document prepared with care, following well established procedures relating to investigations with due diligence and in the context of a public offering by an issuer or its controlling shareholders." *Id.* at 1071.

Relying on *Leatherman,* the Eighth Circuit recently refused to apply Rule 9(b) to claims arising under §§ 11 and 12(2) because the causes of action do not require proof of fraud. *In re NationsMart Corp. Securities Lit.,* 130 F.3d 309 (8th Cir.1997). Several other courts have refused to impose Rule 9(b) requirements on § 11 and § 12(2) claims for the same reason.[9]

The Second Circuit has not decided the question of whether Rule 9(b)'s pleading requirements apply to §§ 11 and 12(2) claims

that are "grounded in fraud." This court need not now decide the issue because the claims as asserted by the plaintiffs sound in negligence rather than fraud. The courts that have described §§ 11 and 12 claims as grounded in fraud and thus subject to Rule 9(b) have done so only in cases that also involve a securities fraud claim which requires scienter.[10] In *Melder,* for example, the Fifth Circuit applied Rule 9(b) to plaintiff's §§ 11 and 12 claims "in light of the complaint's wholesale adoption of the allegations under the securities fraud claims for purposes of the [§§ 11 and 12(2)] claims." 27 F.3d at 1100 (citations omitted). Similarly, in *Shapiro v. UJB Fin. Corp.,* the Third Circuit noted that the §§ 11 and 12(2) claims in the complaint (Count II) incorporated the factual allegations that supported plaintiff's § 10(b) securities fraud claim and that "the specific factual allegations upon which Count II is based...repeatedly aver that defendants "intentionally," "knowingly," or "recklessly" misrepresented and omitted to represent certain material information." 964 F.2d at 287. The instant complaint contains no claim that requires scienter and no allegations of intentional conduct as opposed to negligence as the basis for defendants' misrepresentations.

After reviewing claims similar to those in the instant case and assuming that Rule 9(b) could apply to §§ 11 and 12(2) claims that sound in fraud, the First Circuit recently explained:

> Although the complaint does assert that defendants actually possessed the information that they failed to disclose, those allegations cannot be thought to constitute 'averments of fraud,' absent any claim of

**9.** For Section 11 claims, see *In re AnnTaylor Stores Sec. Litig.,* 807 F.Supp. 990, 1003 (S.D.N.Y.1992); *accord In re In-Store Advertising Sec. Lit.,* 878 F.Supp. 645, 650 (S.D.N.Y.1995); *Nelson v. Paramount,* 872 F.Supp. 1242, 1246 (S.D.N.Y.1994); *In re LILCO,* 625 F.Supp. 1500, 1502 (E.D.N.Y.1986). For Section 12(2) claims, see, *e.g., Loan v. FDIC,* 717 F.Supp. 964, 968 n. 9 (D.Mass.1989); *Seidel v. Pub. Serv. Co.,* 616 F.Supp. 1342, 1357 (D.N.H.1985); *Billet v. Storage Tech. Corp.,* 72 F.R.D. 583, 585 (S.D.N.Y. 1976).

**10.** *See In re Stac Electronics,* 89 F.3d at 1404–05; *Melder,* 27 F.3d at 1100 n. 6; *Shapiro v. UJB Fin. Corp.,* 964 F.2d at 288 (observing that "the plain

language [of Rule 9(b)] clearly encompasses § 11 and § 12(2) claims based on fraud," but reserving judgment on the issue of whether the rule applies to claims that a defendant negligently violated these sections), *cert. denied,* 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992); *Sears v. Likens,* 912 F.2d at 892–93. *See also Ferber v. Travelers Corp.,* 785 F.Supp. 1101, 1111 n. 17 (D.Conn.1991); *Haft v. Eastland Financial Corp.,* 755 F.Supp. 1123, 1133 (D.R.I.1991); *Lucia v. Prospect Street High Income Portfolio, Inc.,* 769 F.Supp. 410 (D.Mass.1991); *Moran v. Kidder Peabody & Co.,* 609 F.Supp. 661, 666–67 (S.D.N.Y.1985), *aff'd,* 788 F.2d 3 (2d Cir.1986).

scienter and reliance. Otherwise, any allegation of nondisclosure of material information would be transformed into a claim of fraud for purposes of Rule 9(b).

*Shaw v. Digital Equipment Corp.,* 82 F.3d 1194, 1223 (1st Cir.1996). In the instant case, plaintiffs allege that they are purchasers of SS & C stock issued pursuant to a registration statement and prospectus that contained material misstatements or omissions. Some of the specific misstatements or omissions alleged by plaintiffs include instances in which defendants knew the information that they failed to disclose. *See, e.g.,* ¶ 37 (statements of historical revenue were misleading because "SS & C was aware that there were continuing obligations upon SS & C and uncertainty about customer acceptance"). However, plaintiffs do not allege that defendants' failure to disclose or to state properly information in their possession was based on an intent to deceive. Plaintiffs' amended complaint complies with the "short and plain statement" requirement of Fed. R.Civ.P. 8(a) and need not meet the more stringent requirements of Rule 9(b).

Defendants' motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for failure to plead fraud with particularity under Federal Rule 9(b) are DENIED.

**SO ORDERED.**