Roman GELFER, et al., Plaintiffs,

v.

PEGASYSTEMS, INC., Alan Trefler, and Ira Vishner, Defendants.

No. CV 98–12527–JLT.

United States District Court, D. Massachusetts.

Jan. 27, 2000.

Jeffrey C. Blcok, Berman, DeValerio & Pease, Boston, MA, for Roman Gelfer.

Peter A. Pease, Berman, DeValerio & Pease, Boston, MA, Stanley M. Grossman, Murielle J. Steven, Pomerantz, Levy, Hauder, Block & Grossman, New York, NY, Michael T. Matraia, Berman, DeValero & Pease, Boston, MA, for Scott Clawson, Linda Clawson, Mark Holman, David Joswick, Mark Sotir.

Mary J. Johnson, Jeffrey B. Rudman, Lisa M. Cameron, Hale & Dorr, Boston,

MA, Mary Jo Johnson, Hale and Dorr, Boston, MA, for Pegasystems, Inc., Alan Trefler.

Steven W. Hansen, Bingham, Dana & Gould, Boston, MA, Colleen A. Manning, Bingham Dana, Boston, MA, for Ira Vishner.

## *MEMORANDUM*

TAURO, District Judge.

At issue is Defendants' Motion to Dismiss this claim for securities fraud. For the reasons discussed below, the motion is DENIED.

### I. *Background:*

Plaintiff Roman Gelfer brings this action individually, and on behalf of a class of individuals, against Defendants Pegasystems, Inc., Alan Trefler, and Ira Vishner alleging securities fraud under Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78(t), and the rules and regulations promulgated thereunder. Plaintiffs include the class of individuals who purchased Pegasystems stock during the class period April 2, 1998 through November 23, 1998. Defendant Pegasystems ("the Company") is a Massachusetts corporation that provides computer software to various service industries. Defendant Alan Trefler is a founder of Pegasystems as well as its President and Clerk since it incorporated in 1983. He is also a Director of the Corporation. Defendant Ira Vishner is a founder of Pegasystems and has served as Vice President, Treasurer and CFO since 1983. He resigned as CFO on January 9, 1999. Vishner has been a Director since 1994.

Plaintiffs allege that Defendants made numerous false and misleading statements concerning the financial state of Pegasystems, both prior to and during the class period. These statements were contained in press releases to the public and financial disclosures to the SEC. Plaintiffs claim that these statements were false and misleading, because they contained representations based on accounting practices that were fraudulent and that violated generally accepted accounting principles ("GAAP"). Plaintiffs allege that, as a result of these misstatements, the market price of Pegasystems stock was artificially inflated during the class period. Plaintiffs further assert that once the fraudulent accounting practices were disclosed, Pegasystems stock price fell considerably, damaging Plaintiffs.

Plaintiffs allegations are based on the following chain of events:

[Pre–Class Period] On October 29, 1997, Pegasystems issued a press release announcing that it was delaying release of its 1997 third quarter financial results, and restating its 1997 second quarter results, because of improper revenue recognition in its accounting methods. The press release went on to implicitly blame Pegasystems's auditors, Ernst & Young ("E & Y"), for the improper revenue recognition.[1] *See* Amended Complaint at ¶ 32. Following the press release, Pegasystems stock price dropped dramatically. *See id.* at ¶ 34.

On October 30, 1997, E & Y resigned as Defendant Pegasystems's independent auditor. *See id.* at ¶ 36.

On November 6, 1997, the Company filed a Form 8–K with the SEC disclosing E & Y's resignation and once again blaming E & Y for the restatement of the 1997 second quarter financial statement.[2] *See id.* at ¶ 35.

---

1. Defendants stated that the improper revenue recognition from a contract entered into with First Date Resources followed discussions with, and the advice of, E & Y. *See* Amended Complaint at ¶ 33 (quoting October 29, 1997 Press Release).

2. The Form 8–K stated: "Contrary to the expectations of [Pegasystems] based on its discussions with E & Y at the time the FDR Transactions were being negotiated, E & Y recently advised [Pegasystems] that $5 million of software license revenue recognized by [Pegasystems] in the quarter ending June 30,

On November 14, 1997, E & Y filed a letter with the SEC in response to Pegasystems's Form 8–K, denying that it had recommended the revenue recognition mechanisms utilized in the 1997 second quarter 10–Q. *See id.* at ¶ 38. To the contrary, E & Y stated that it advised against the improper revenue recognition ultimately used. *See id.*

[Class Period Begins] On April 2, 1998, Pegasystems issued a Press Release indicating that it would be restating financial statements for the first three quarters of 1997, in part to reflect "changes in the timing of revenue recognition." Attachment A, Defendants' Memorandum in Support of its Motion to Dismiss.[3] The Press Release also contained a statement from Defendant Vishner that: "We have been working closely with our new accountants, and expect that accounting related issues are a thing of the past." Amd. Comp. at ¶ 44 (quoting April 2, 1998 Press Release).

On April 15, 1998, Pegasystems filed Form 10–Q/A's for 1997's first and second quarters, restating financial results for each quarter. *See id.* at ¶ 41.

On May 11, 1998, the Company announced that its 1998 first quarter earnings were robust, with nearly double the sales of the prior year's first quarter. *See id.* at ¶ 46. On May 15, 1998, the Company filed a financial statement with the SEC documenting this performance. *See id.* at ¶ 47.

On July 30, 1998, the Company announced record earnings and revenues for the 1998 second quarter, filing a corresponding financial statement

with the SEC on August 14, 1998. *See id.* at ¶¶ 49, 40.

On October 29, 1998, Pegasystems announced record earnings and revenues for the 1998 third quarter. *See id.* at ¶ 52.

On November 23, 1998, the Company filed a Form 8–K with the SEC stating that it was delaying the filing of its 10–Q for the 1998 third quarter because it was reviewing revenue transactions with its external auditors. *See id.* at ¶ 54. [Class Period Ends] Finally, on January 20, 1999, Pegasystems issued a press release stating that it would restate earnings for the first and second quarters of 1998, and revise the 1998 third quarter results announced on October 29, 1998. *See id.* at ¶ 57. In addition, the Company indicated that it would again restate financial results for the first and second quarters of 1997. *See id.* Form 10–Q/A's were filed for each of the restated quarters on January 10. *See id.* at ¶¶ 59, 60, 61. A Form 10–Q for the 1998 third quarter, filed with the SEC on the same day, explained that the reason for the 1997 and 1998 restatements was the Company's failure to properly account for certain revenue transactions. *See id.* at ¶ 57. Once again the accounting difficulties resulted from changes in the timing of revenue recognition. *See id.*

Plaintiffs argue that Defendants' actions constitute securities fraud because certain financial statements filed with the SEC, and public announcements of Pegasystems's financial performance, were based on fraudulent accounting practices. Plaintiffs contend that Defendants knew or should have known of these improper accounting practices during the duration of the class period (April 2, 1998—November

---

1997 from one of the FDR Transactions should not have been recognized in that quarter." *Id.* at ¶ 35 (quoting November 6, 1997 Form 8–K).

**3.** Plaintiffs' Complaint misstates the content of the April 2, 1998 Press Release. *See* Plaintiffs Opposition to Motion of Defendants to Dismiss at 4, n. 4 (acknowledging error). Defendants attached the Press Release to their pleading to clarify its content.

23, 1998) because of the circumstances surrounding the fraudulent statements—including the accounting problems that arose prior to the class period. Those events, between July 2, 1997 and October 29, 1997, are the subject of a separate class action suit, *Chalverus v. Pegasystems*, 59 F.Supp.2d 226(D.Mass.1999), currently before Chief Judge Young (*"Pegasystems I"*). Plaintiffs assert that Defendants continued to engage in those improper accounting practices during the class period in this case, while filing false financial statements, announcing overstated financial results to the public, and making false statements that accounting problems were resolved.

Defendants now move to dismiss under Fed.R.Civ.P. 12(b)(6), 9(b), and the Public Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u–4(b)(3)(A).

## II. *Analysis:*

In deciding Defendants' motion to dismiss, the court must assume that Plaintiffs' allegations are true and make all reasonable inferences in Plaintiffs' favor. *Lirette v. Shiva Corp.*, 27 F.Supp.2d 268, 274 (D.Mass.1998) (quoting *Monahan v. Dorchester Counseling Ctr.*, 961 F.2d 987, 988 (1st Cir.1992)). Dismissal is appropriate "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *In re Peritus Software Services, Inc. Securities Litig.*, 52 F.Supp.2d 211, 217 (D.Mass.1999) (quoting *Roeder v. Alpha Indus.*, 814 F.2d 22, 25 (1st Cir.1987)) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

In addition, claims for securities fraud also must meet the stricter pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA. The First Circuit recently addressed for the first time how the PSLRA impacted this Circuit's treatment of the pleading requirements in securities fraud cases. *See Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir.1999) (*"FTP"*) (affirming *Greebel v. FTP Software, Inc.*, 182 F.R.D.

370 (D.Mass.1998) (Tauro, C.J.)). Noting the First Circuit's "strict and rigorous [application of] the Rule 9(b) standard in securities fraud actions," the *FTP* court determined that "[t]he PSLRA's pleading standard is congruent and consistent with the pre-existing standards of this circuit." *Id.* at 193 (citing *Maldonado v. Dominguez*, 137 F.3d 1, 9 (1st Cir.1998)). This Circuit requires a plaintiff claiming fraud to "specify (1) the statements that the plaintiff contends were fraudulent, (2) the identity of the speaker, (3) where and when the statements were made, and (4) why the statements were fraudulent." *In re Peritus*, 52 F.Supp.2d at 219 (citing *Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir.1997)). *See also FTP,* 194 F.3d at 193. In addition, this Circuit "require[s] plaintiffs who bring their claims on information and belief to 'set forth the source of the information and the reason for the belief.'" *Id.* at 194 (citing *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir.1991) (superceded by statute on other grounds, as stated in *FTP*, 194 F.3d at 196)).

Finally, where a specific state of mind must be proven, "the PSLRA now requires a complaint to 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (citing PSLRA, 15 U.S.C. § 78u–4(b)(2)). This requirement, however, "does not alter the preexisting definition of scienter adopted by this circuit." *Id.* at 201. In this Circuit, securities fraud requires a minimum scienter of recklessness,

> defined as a highly unreasonable omission, involving not merely simple, or even inexcusable, negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious the actor must have been aware of it.

*Id.* at 198. (quoting *Sundstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1045 (7th Cir.1977)).

Defendants' motion to dismiss is based primarily upon their argument that Plaintiffs have failed to meet the rigorous pleading requirements for scienter—both with regard to the Corporate Defendant and Defendants Trefler and Vishner. Defendants correctly point out that Plaintiffs' pleadings must create a strong inference that Defendant acted with the minimal scienter—in this case, recklessness. Defendants argue that Plaintiffs' failed to meet this burden because the restatement of revenue by Defendants does not create a strong inference that any Defendants acted recklessly with regard to Pegasystems's accounting methods. Defendants also challenge Plaintiffs' Section 20(a) claim of control person liability against Defendants Trefler and Vishner. For the reasons discussed below, this court disagrees.

## A. Defendants' Motion to Dismiss for Failure to Sufficiently Allege Scienter

Chief Judge Young's decision in *Pegasystems I*, 59 F.Supp.2d 226 (D Mass. 1999), is instructive on the issue of scienter. Indeed, the allegations there comprise the factual background for this case. In *Pegasystems I*, Plaintiffs' claims were based on improper revenue recognition which allegedly led to false and misleading statements in two press releases and a filing with the SEC. *See id.* at 321–32. Here, Plaintiffs' claims are based on four press releases by Pegasystems and two separate quarterly filings by the Company with the SEC.[4] Plaintiffs allege that the releases and filings were false and misleading for the same reason as those in *Pegasystems I*, i.e., because they relied upon financial results tainted by improper

revenue recognition. *See* Amd. Comp. at ¶¶ 53, 57–58; *Pegasystems I*, 59 F.Supp.2d at 236. The factual similarities between the two cases, and the legal framework used by Chief Judge Young for analyzing a motion to dismiss this type of claim, lead this court to conclude that Plaintiffs' pleadings create a strong inference of scienter.

## 1. Defendant Pegasystems's Conduct in Light of *Pegasystems I* Creates a Strong Inference of Scienter.

*Pegasystems I* is most instructive for its analysis of scienter in the revenue recognition context. As Defendants point out, Chief Judge Young begins his analysis of scienter by stating that "[a] defendant's failure to recognize revenue in accordance with GAAP does not, by itself, suffice to establish scienter." *Id.*, 59 F.Supp.2d at 233 (citing *Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 362 (1st Cir. 1994)) (superceded by statute on other grounds, as stated in *FTP*, 194 F.3d at 196)). Instead, the proper question is "whether the alleged GAAP violations, combined with other circumstances indicative of fraudulent intent, raise a strong inference that the defendants acted with scienter." *Id.* (citing *In re Peritus*, 52 F.Supp.2d at 224). *See also In re Ancor Communications, Inc. Securities Litig.*, 22 F.Supp.2d 999, 1005 (D.Minn.1998)). This approach is wholly consistent with the *FTP* court's approach to analyzing scienter under the provisions of the PSLRA. *See id.* 194 F.3d at 196 ("[W]hatever the characteristic pattern of the facts alleged, those facts must now present a strong inference of scienter."). The factors that Chief Judge Young considered to determine scienter in *Pegasystems I* included: the magnitude of the accounting overstatement; violations of the Company's internal accounting policy; omissions of fact from public statements, a disagreement with the

---

4. According to Plaintiffs' Complaint, the false and misleading statements occurred on six occasions: an April 2, 1998 press release; a May 11, 1998 press release; a May 15, 1998 Form 10–Q filed with the SEC; a July 30, 1998 press release; an August 14, 1998 Form 10–Q filed with the SEC; and an October 29, 1998 press release. *See* Amd. Comp. at ¶¶ 44, 46–47, 49–50, 52–53.

Company's auditor; and motives to commit fraud. *See id.* at 234–37.

Although the circumstances surrounding the allegedly fraudulent statements in this case are not identical to those in *Pegasystems I*, they are equally compelling in their creation of a strong inference of fraudulent intent, in part because they follow the events giving rise to *Pegasystems I*. Here, Plaintiffs have sufficiently alleged facts implicating four factors that, taken together, support a strong inference that Defendants acted recklessly. Those factors are: 1) the similarity between the conduct giving rise to *Pegasystems I* and the conduct in this case; 2) the magnitude and frequency of the restatements; 3) Defendants' dispute with E & Y and communications with a subsequent accountant; and 4) Defendants' violation of its own internal accounting standards.

a. **The similarity of Defendants' conduct to that found in *Pegasystems I* creates a strong inference of scienter.**

█ The strongest argument presented by Plaintiffs is that Defendants engaged in the same improper accounting practices during the class period here that were utilized during the class period in *Pegasystems I*. This assertion is strongly probative of scienter because the Defendants were on notice of the improper accounting practices giving rise to *Pegasystems I*.

Defendants attempt to distinguish this case from *Pegasystems I* by incorrectly importing into the analysis of scienter a standard that is applied in determining whether a Plaintiff has met the pleading requirements regarding a material misstatement or omission. Defendants cite numerous cases for the proposition that a plaintiff pleading securities fraud based on improper revenue recognition must specify the particular transaction in which revenue was improperly recorded, the customer's name, the terms and timing of the transaction, and the approximate value of the fraudulent transaction. *See* Defendants' Reply Memorandum at 7 (citing *Pegasystems I*, 59 F.Supp.2d at 233); *Lirette*, 27 F.Supp.2d. at 278. *See also In re Peritus*, 52 F.Supp.2d at 223. This proposition is entirely correct as it applies to determining whether a material misstatement or omission took place. But, none of the cited cases apply such a test in determining whether a plaintiff has pled scienter, nor do Defendants argue that Plaintiffs have failed to establish a material misstatement or omission.[5] Whether Plaintiffs in this case, or in *Pegasystems I*, met some inapplicable standard is irrelevant.

Moreover, Plaintiffs need not prove that the accounting practices at issue here were identical to those in *Pegasystems I* in order to create a strong inference of scienter. Plaintiffs need only prove recklessness—that Defendants knew or should have known about the improper accounting practices[6]—in order to meet the requirements of scienter. It is enough then that Plaintiffs show that the questioned accounting practices in this case were sufficiently similar to those questioned in *Pegasystems I* that Defendant knew or should have known about them.

Plaintiffs have met their burden by using Defendants' own admissions. According to the Complaint, Defendants explain the 1997 restatement of revenue (during the class period of *Pegasystems I*) by stating that " '[t]he restatement reflects changes in the timing of revenue recognition and the expenses on certain contracts.' " Amd. Comp. at ¶ 58 (quoting Defendants' 1997 Form 10K). Defendants' explanation for the revision and restate-

---

5. The appropriate standard for determining if scienter is properly pled is whether "a complaint ... 'state[s] with particularity facts giving rise to a strong inference of [scienter].' " *FTP*, 194 F.3d at 194 (quoting PSLRA, 15 U.S.C. § 78u–4(b)(2)).

6. As the Court of Appeals notes in *FTP*, "should have known" when used, as here, in the "reckless disregard" sense, is consistent with the Seventh Circuit's definition of recklessness adopted by this Circuit. *See id.* at 198–99.

ment that took place during the class period in this case is nearly identical: " '[they] primarily reflect changes in the timing of revenue recognition.' " *Id.* (quoting Defendants Third Quarter 1998 Form 10Q). The explanations provided by Defendants in these two instances are so close that the same or substantially similar accounting irregularities must have led to the repeated instances of improper revenue recognition. Defendants were thus on notice that some problem existed with their accounting of revenue. This court finds a strong inference of recklessness in their failure to remedy or prevent the continued improper recognition of revenue.

### b. The magnitude and frequency of the restatements create a strong inference of scienter.

The magnitude of the revenue overstatements during the class period also tends to support a strong inference of scienter. Defendants restated financial results for the first and second quarters of 1998, and revised results announced for the third quarter, correcting an overstatement of $18 million in revenue (or 27% of total revenue) and an overstatement in income of $11 million. *See* Amd. Comp. at ¶¶ 57, 62. Over the first three quarters of 1998, these restatements and the revision turned an announced net income of $10.9 million into an actual loss of over $1 million, an overstatement of 110%.[7] *See id.* at ¶ 62. This result is similar to that in *Pegasystems I*, where Defendants' incriminating restatement of revenue turned a $2.2 million gain into a $2.8 million loss. *See id.*, at 234.[8]

Defendants argue that the magnitude of the restatement is not particularly compelling in this case because their history of accounting problems suggest that they would not "deliberately" continue down a path that led them to continued accounting problems. This argument is flawed because it self-servingly misstates the requirements for scienter. Defendants' conduct need only be reckless, not deliberate. Defendants' argument also suggests that the court should infer from the allegations in Defendants' favor, which is wholly inappropriate at this stage in the proceedings.

In addition to the magnitude of the restatements, their frequency also lends to the inference of recklessness. Defendants restated revenue on at least four different occasions, twice prior to the class period, and twice during the class period. *See* Amd. Com. at ¶¶ 32, 39–41, 57. Three of these restatements related to 1997 revenues, while the third related to 1998 revenues. *See id.* These repeated restatements create an inference of recklessness because three of them occurred after the improper accounting methods were brought to light by the resignation of E & Y. The last two restatements, which occurred in January of 1999, took place over a year later than the first, long after Defendants should have remedied their improper accounting methods.

### c. Defendants' conflict with E & Y, and the management letters from Arthur Anderson, create an inference of scienter.

Next, Plaintiffs argue that Pegasystems' relationship with its independent auditors

7. Chief Judge Young notes that numerous other district courts have determined that significant financial restatements may support a conclusion that defendants acted with scienter. *Pegasystems*, 59 F.Supp.2d at 233 (citing *In re Miller Industries, Inc. Sec. Litig.*, 12 F.Supp.2d 1323, 1332 (N.D.Ga.1998)) (dramatic overstatement and other factors support strong inference of scienter); *In Rehm v. Eagle Fin. Corp.*, 954 F.Supp. 1246, 1255 (N.D.Ill.1997) (91% restatement of earnings supports finding of scienter); *Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927

F.Supp. 1297, 1314 (C.D.Cal.1996) (significant overstatement supports inference of scienter).

8. The respective restatements also wiped out Pegasystems "records": in *Pegasystems I*, the restatement ended the Company's streak of consecutive profitable quarters at 49. *See id.* at 234. In this case, the subsequent restatements in 1998 turned "record" second and third quarter profits into losses. *See* Amd. Comp. at ¶¶ 50, 51.

is strongly suggestive of scienter. This argument is based first on the dispute between the Company and E & Y over recognition of revenue from the First Data Resource contract. Plaintiffs allege that the dispute between Defendants and E & Y is strongly suggestive of scienter because E & Y's statements following their resignation as auditor indicate that Pegasystems improperly recognized revenue against E & Y's explicit recommendation. *See* Amd. Comp. at ¶¶ 37–38. Chief Judge Young expressly rejected this argument in *Pegasystems I* because a disagreement over proper accounting methods "'does not establish conscious behavior on the part of Defendants.'" 59 F.Supp.2d at 235–36 (quoting *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1021 (5th Cir. 1996)). This argument is more compelling here, however. Where Defendants have allegedly engaged in the same improper accounting practices, the prior dispute looks less like a good faith disagreement over accounting methods, and more like a deliberate or reckless disregard for the appropriate methods. At the very least, the disagreement and subsequent SEC disclosure effectively put Defendants on notice that they needed to change their accounting practices.

In addition, Plaintiffs allege that the management letters prepared by Defendants' new accountant, Arthur Andersen, further support a finding of recklessness because the 1997 letter warns of "material weaknesses in the Company's internal control environment" and recommends changes in "revenue recognition and financial reporting." Amd. Comp. at ¶ 68. The 1998 letter warns of similar "material weaknesses." *Id.* at ¶ 69. Defendants attempt to undermine this argument by as-

serting that the letters were not received in time to put them on notice and make their actions during the class period reckless. This argument is without merit. The conflict with E & Y and the need to restate revenue prior to commencement of the class period put Defendants on notice of the deficiencies in their accounting practices. To the extent that these letters document a failure to remedy such practices, they add to the inference of scienter.

**d. Defendants' violations of their own internal policies regarding revenue recognition are probative of scienter.**

Next, Plaintiffs argue that Defendants' violations of their own internal policies regarding revenue recognition strongly suggest scienter. *See* Amd. Comp. at ¶¶ 73–82. While the court in *Pegasystems I* found such violations suggestive of scienter, *see id.* at 234, this factor by itself is not particularly compelling where the violations of internal policies are not materially different from the deviations from GAAP. In this case, Plaintiffs allege that Defendants violated the Software Revenue Recognition Statements of Position ("SOP") 91–1, 97–2, promulgated by the Accounting Standards Executive Committee of the American Institute of Public Accountants. *See* Amd. Comp. at ¶¶ 79–82. These standards, adopted by Defendant Pegasystems, were allegedly violated by Defendants' "recogn[ition of] revenue before the earnings process was complete." *Id.* at ¶¶ 81–82. Defendants' attempts to undermine the sufficiency of Plaintiffs' allegations on this point are unpersuasive.[9] While Defendants' alleged violations of SOP 91–1, 92–2 are not materially different from the alleged GAAP violations, they are probative of scienter because they sug-

9. Defendants argue that the violation of internal accounting policy, specifically SOP 91–1 and 97–2, are not sufficiently pled because Plaintiffs' allegations are based on "information and belief" pleading. *See* Reply Mem. at 14–15. This characterization is specious. Plaintiffs allegations are based on Defendants' own statements, *see* Amd. Comp. at ¶¶ 81–82, and Defendants do not specify how those alle-

gations are insufficient. Instead, Defendants use this characterization, and the different time periods in which the standards applied, to distinguish the violations in this case from those in *Pegasystems I*. Whether such distinctions exist is irrelevant. The important question in this inquiry is whether violations were the same or different from previous ones.

gest that Defendants' accounting practices recklessly disregarded another red flag—accounting standards the company adopted.

Considering these four factors, Plaintiffs have pleaded with particularity facts sufficient to create a strong inference that Defendant Pegasystems acted with recklessness. Defendants' Motion to Dismiss for failure to sufficiently plead scienter, as it applies to Pegasystems, is therefore DENIED.

**2. Plaintiffs Have Alleged Facts Sufficient to Create a Strong Inference of Scienter Regarding Defendants Trefler and Vishner.**

■ Defendants also argue that Plaintiffs have failed to allege specific facts to "support a conclusion that [Defendants] Trefler and Vishner had personal knowledge" of the fraudulent nature of the financial statements made during the class period. Defendants' Reply Memorandum at 17–18. Defendants assert, rather, that Plaintiffs simply plead that Trefler and Vishner, as President and Chief Financial Officer, should have knowledge based solely on their positions with the company. *See id.* This line of argument both misstates the standard for scienter and understates the efficacy of Plaintiffs' Complaint. Plaintiffs allege that Trefler and Vishner both had personal knowledge of the accounting improperties that gave rise to Pegasystems I. In public statements on April 2, 1998, made after the 1997 restatement, Trefler and Vishner both make assurances that the Company's accounting problems have been resolved. *See* Amd. Comp. at ¶ 44. Plaintiffs' allegations suggest that the accounting problems were not resolved, and that the Corporate Defendant was reckless in not correcting or preventing the same or substantially similar problems. Taken together, this suggests that Trefler and Vishner also acted recklessly by allowing Pegasystems to continue to release false and misleading financial statements. To put it another way: Trefler and Vishner cannot plead igno-

rance to a problem they claimed to have fixed.

Defendants' Motion to Dismiss for failure to sufficiently plead scienter, as it applies to Defendants Trefler and Vishner, is therefore DENIED.

**B. Defendants Trefler and Vishner are Control Persons Under Section 20(a).**

■ Finally, Defendants argue that claims arising under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), should be dismissed because Plaintiffs have not established an underlying securities violations. In addition, they assert that such claims against Trefler also should be dismissed because Plaintiffs have not met the pleading requirements for control person liability. These arguments are without merit. First, as discussed above, Plaintiffs have adequately pleaded the underlying securities violation. Second, as for Trefler, he cannot escape control person liability where he made the allegedly false and misleading statement. *See Pegasystems I,* 59 F.Supp.2d at 236 (citing *In re PLC Systems, Inc., Securities Lit.,* 41 F.Supp.2d 106, 122 (D.Mass.1999)). Here Plaintiffs have alleged that Trefler made materially false and misleading statement in press releases on May 11, 1998 and October 29, 1998. Defendants Trefler and Vishner are thus both subject to control person liability under Section 20(a), and their Motion to Dismiss is DENIED as it applies to this claim.

**III. *Conclusion*:**

Defendants' Motion to Dismiss is DENIED in its entirety because Plaintiffs have alleged with particularity facts sufficient to create a strong inference of scienter, and have sufficiently pleaded control person liability under Section 20(a).

AN ORDER SHALL ISSUE.