George KINNEY, Alles Corporation, Thomas Gallagher, Ben Hasten, and Mark Jaffe, on behalf of themselves and all others similarly situated,

v.

METRO GLOBAL MEDIA, INC., Dan H. Eberly, Kenneth F. Guarino, A. Daniel Geribo, T. James Blair, Janet M. Hoey, and Trien Rosenberg Rosenberg Weinberg Ciullo & Fazzari, LLP.

No. 99–579 ML.

United States District Court, D. Rhode Island.

Oct. 12, 2001.

Matthew F. Medeiros, Little, Bulman, Medeiros & Whitney, P.C., Providence, RI, Joseph P. Garland, Kenneth A. Elan, Kenneth A. Elan, New York, NY, Leo W. Desmond, Law Office of Leo W. Desmond, West Palm Beach, FL, I. Stephen Rabin, Jacqueline Sailer, Rabin & Peckel LLP, New York, NY, for George Kinney, plaintiff.

Douglas A. Giron, Preston W. Halperin, Shechtman Halperin Savage LLP, Providence, RI, Gregory A. Markel, Francis S. Chlapowski, Nicole M. Hunn, Brobeck, Phleger & Harrison LLP, New York, NY, Joseph N. Paykin, James D. Christo, Raice Payken & Krieg, LLP, New York, NY, for Metro Global Media, Inc., Dan H. Eberly, Kenneth Guarino, A. Daniel Geribo, T. James Blair, Janet M. Hoey, defendants.

James A. Ruggieri, Providence, RI, John T. Walsh, Jr., Higgins, Cavanagh & Cooney, Providence, RI, Joseph M. Coppola, R. James Bradford, Mary Ann D'Amato, Mendes & Mount, New York, NY, for Trien Rosenberg Rosenberg Weinberg Ciullo & Fazzari LLP, defendant.

Matthew F. Medeiros, Little, Bulman, Medeiros & Whitney, P.C., Jacqueline Sailer, Rabin & Peckel LLP, New York, NY, for Alles Corp., Thomas Gallagher, Ben Hasten, Mark Jaffe, defendants.

## MEMORANDUM AND ORDER

LISI, District Judge.

Plaintiffs George Kinney, Alles Corporation, Thomas Gallagher, Ben Hasten, and Mark Jaffe, on behalf of themselves and all others similarly situated ("Plaintiffs") have filed a multi-count complaint against Metro Global Media, Inc. ("Metro Global"), several of its officers and directors, and its accountants, Trien Rosenberg Rosenberg Weinberg Ciullo & Fazzari, LLP ("Trien Rosenberg"). Plaintiffs allege that Metro Global and certain of its present and former officers and directors violated §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), by making a number of misrepresentations and omissions in press releases and required filings with the Securities and Exchange Commission ("SEC"), which caused Metro Global stock to trade at artificially inflated prices. Plaintiffs further allege that Trien Rosenberg falsely represented that the financial statements included in Metro Global's 1997 and 1998 Form 10–KSBs, or annual reports, were in compliance with Generally Accepted Accounting Principles ("GAAP")[1] and that it had conducted its audits in accordance with Generally Accepted Accounting Standards ("GAAS")[2].

This Memorandum and Order deals with Trien Rosenberg's Motion to Dismiss the Amended Class Action Complaint and its Motion for Summary Judgment. For the reasons discussed below, both motions are denied.[3]

### I. Facts

Metro Global is an adult entertainment company engaged in the production and distribution of adult prerecorded videocassettes, magazines, CD–ROMS, and other products. Trien Rosenberg, an accounting firm that provides a full range of accounting, auditing, tax, and business consulting services, was Metro Global's independent auditor until May 10, 1999. It audited Metro Global's 1997 and 1998 10–KSBs, which were filed with the SEC. The events giving rise to this complaint occurred between September 13, 1996, and September 13, 1999, (the "Class Period"), when the Plaintiffs purchased or otherwise acquired Metro Global securities. During the Class Period, Metro Global common stock traded on the Nasdaq small cap market under the symbol "MGMA."

---

1. GAAP are the principles issued by the Financial Accounting Standards Board which are recognized by the accounting profession as the "conventions, rules, and procedures that define approved accounting practices at a particular time." BLACK'S LAW DICTIONARY 692 (7th ed.1999). Financial statements filed with the SEC that are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. 17 C.F.R. § 210.4–01(a)(1).

2. GAAS are the guidelines issued by the American Institute of Certified Public Accountants which establish the "criteria for the auditor's examination and required reports." BLACK'S LAW DICTIONARY 692–93 (7th ed.1999).

3. On January 16, 2001, this Court issued a Memorandum and Order denying the remaining Defendants' Motion to Dismiss.

Throughout the Class Period Metro Global filed quarterly Form 10–QSB reports and yearly Form 10–KSB reports with the SEC. Metro Global's fiscal 1997 and fiscal 1998 10–KSBs were filed with the SEC on or about August 29, 1997, and September 14, 1998, respectively. Attached and incorporated by reference to the 1997 and 1998 10–KSBs were opinion letters which certified that the financial statements contained in each 10–KSB had been prepared by Trien Rosenberg in accordance with GAAP. Trien Rosenberg also represented that it had audited the subject financial statements in accordance with GAAS.

On December 2, 1998, Metro Global filed a Form SB–2 registration statement and prospectus ("Registration Statement") in connection with the sale of 659,000 shares of Metro Global common stock by certain selling shareholders. On January 7, 1999, the SEC sent a letter to defendant A. Daniel Geribo pointing out several accounting problems with the proposed Registration Statement. The SEC requested revision, disclosure, and clarification.[4] Despite this red-flag, Metro Global continued to file forms with the SEC reporting significant revenue. Moreover, Metro Global continued to announce "exceptional" and "extraordinary" growth through its press releases.

On April 19, 1999, Metro Global filed its third quarter Form 10–QSB with the SEC which acknowledged that the SEC had recommended that Metro Global restate its quarterly financial statements for the first two quarters of fiscal year 1999 and

stated that Metro Global intended to amend its unaudited 1999 first and second quarter financial reports. On May 10, 1999, Metro Global replaced Trien Rosenberg with the accounting firm Grant Thornton, LLP ("Grant Thornton"). On June 22, 1999, Grant Thornton resigned because it had discovered that Defendant Kenneth F. Guarino, while not listed as a director or officer of Metro Global, had operating and financial decision making authority at Metro Global, a role that had not previously been disclosed. Based on this information, Grant Thornton was unwilling to be associated with Metro Global's financial statements.

On September 14, 1999, Defendants announced that accounting improprieties required a restatement of Metro Global's financial statements for fiscal years 1996, 1997, and 1998, which would result in a substantial reduction of the earnings reported for those years. On the news of the restatements of Metro Global's financials, Metro Global common stock, which during the Class Period had traded as high as $6\frac{13}{16}$ per share, closed at a low of $1\frac{17}{32}$ per share. After the close of trading on September 14, 1999, trading was halted in Metro Global common stock.

Metro Global's true financial condition was not revealed until October 7, 1999, when Metro Global filed its Form 10KSB/A report with the SEC for the fiscal year ending May 29, 1999. In this report Metro Global restated its financial results for the first three quarters of fiscal year 1999 and for fiscal years 1996, 1997, and 1998.[5] When Metro Global's true fi-

---

4. As a result of the problems addressed by the SEC in its January 7, 1999, letter to Geribo, this Registration Statement never became effective. The problems identified by the SEC could not be resolved by a simple amendment of the Registration Statement.

5. The 1999 Form 10 KSB/A report also revealed additional details concerning financial liabilities incurred by Metro Global in the preceding two fiscal years. These disclosures revealed the full extent to which defendant Guarino was involved in Metro Global's financial affairs, as they revealed that notes

nancial status became known, it painted a very different picture than the one Metro Global had been presenting through its press releases and SEC filings. Net income was overstated for the first three quarters of fiscal year 1999 by a total of $2,765,628, or 253%. Net income was overstated for fiscal year 1996 through fiscal year 1998 by a total of $4,507,228, or 256%.

Plaintiffs filed the original Complaint in this matter on November 22, 1999. Plaintiffs filed an Amended Class Action Complaint, (the "Amended Complaint"), naming Trien Rosenberg as a defendant for the first time, on May 16, 2000.

## II. Discussion

### A. Motion to Dismiss

Trien Rosenberg has filed a Motion to Dismiss the Amended Complaint pursuant to Fed.R.Civ.P.12(b)(6) for failure to state a claim for which relief may be granted under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and pursuant to Fed.R.Civ.P. 9(b) for failure to properly plead a claim for fraud. Trien Rosenberg argues that this securities fraud class action should be dismissed because: 1) Plaintiffs' Amended Complaint fails to allege with particularity the statements purportedly made by Trien Rosenberg that are misleading and the reasons why the statements are misleading, 2) the Amended Complaint fails to adequately plead facts that support Plaintiffs' claim that Trien Rosenberg acted with the scienter required by the PSLRA, and 3) the Plaintiffs' claim of detrimental reliance on the failure to properly account for certain con-

vertible securities in certain Metro Global financial reports is inadequate as a matter of law.

In reviewing a motion to dismiss filed pursuant to Fed.R.Civ.P. 12(b)(6), this Court "accept[s] well-pleaded facts as true and draw[s] all reasonable inferences from those facts in favor of the plaintiff." *Figueroa v. Rivera*, 147 F.3d 77, 80 (1st Cir.1998). "Dismissal is appropriate 'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" *Id.* (quoting *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990)).

### 1. Particularity of the Allegations

"The enactment of the PSLRA in 1995 marked a bipartisan effort to curb abuse in private securities lawsuits, particularly the filing of strike suits." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 191 (1st Cir.1999) (footnote omitted). The text of the PSLRA requires that any complaint alleging that a statement or omission is misleading: 1) specify each statement alleged to be misleading, 2) specify the reason or reasons why the statement is misleading, and 3) if an allegation regarding the statement or omission is made on information and belief, state with particularity all facts on which that belief is formed. 15 U.S.C. § 78u–4(b)(1). "The effect of this is to embody in the Act itself at least the standards of Rule 9(b), Fed.R.Civ.P." *Greebel*, 194 F.3d at 193.

In the Amended Complaint the Plaintiffs cite to each SEC filing that they allege to be false and misleading. Plaintiffs point

---

payable and accrued interest were due to Guarino, to a company partially owned by Guarino, and to a Rhode Island company owned by a trust, the primary beneficiaries of which are Guarino's children. (Guarino's involvement would be of particular concern, as Guarino pled guilty to federal charges of con-

spiracy to defraud the government by manipulating the books and records of Metro Global to conceal certain monthly cash payments.) The 10–KSB/A report also revealed previously undisclosed information regarding convertible debentures entered into by Metro Global.

out that Trien Rosenberg issued *unqualified* audit reports on Metro Global's financial statements for fiscal years 1996 through 1998, certifying to the investing public that these financial statements were fairly presented and free from material error, and that Trien Rosenberg had conducted its audits of these financial statements in accordance with GAAS. The Amended Complaint lists a number of auditing standards and principles allegedly violated by Trien Rosenberg while conducting its audit and preparing its audit report. For example: in ¶ 118 of the Amended Complaint, Plaintiffs enumerate eight ways in which Trien Rosenberg allegedly violated GAAS; ¶ ¶ 114, 120, and 121 allege violations of GAAP; and in ¶ 123, Plaintiffs allege that Trien Rosenberg engaged in acts, practices, and courses of business that operated as a fraud and deceit upon Plaintiffs, and that Trien Rosenberg employed devices, schemes, and artifices to defraud, and engaged in acts, practices, and a course of conduct to maintain artificially high market prices for Metro Global's common stock in violation of section 10(b) of the Exchange Act and SEC rule 10b–5.

■ It is not for this Court to evaluate the veracity of each allegedly false statement Plaintiffs attribute to Trien Rosenberg. The question of whether or not the statements actually were materially false and misleading is one for a jury. *See, e.g., Byrd v. Blue Ridge Rural Electric Coop.,* 356 U.S. 525, 537, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) ("An essential characteristic of [the federal] system is the manner in which, in civil common-law actions, it dis-

tributes trial functions between judge and jury ... [assigning] the decisions of disputed questions of fact to the jury."). At this stage in the case, the fact that the Plaintiffs specified *each* statement they allege to be misleading *and* specified the reasons why the statements were allegedly misleading is sufficient to sustain their burden.

The Amended Complaint further alleges that Trien Rosenberg violated GAAP in connection with Metro Global's convertible securities and the amortization of Metro Global's film library. Am. Compl. ¶¶ 93, 122. It also identifies alleged violations of GAAP in connection with all of the 10–KSB reports at issue. Am. Compl. ¶¶ 95, 114–117, 120–121. As stated above, it is for a jury to determine if these allegations are true. *Byrd,* 356 U.S. at 537, 78 S.Ct. 893. For now all this Court must consider is whether Plaintiffs have satisfied the heightened burden established by the PSLRA. This Court finds that Plaintiffs have in fact done so.

*2. Scienter*

■ The Supreme Court has held that merely negligent conduct does not give rise to liability for securities fraud. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 214, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Instead there must be a showing of scienter, defined as "a mental state embracing intent to deceive, manipulate, or defraud." [6] *Id.* at 193 n. 12, 96 S.Ct. 1375. Scienter may be pled through allegations of reckless conduct. *See Cook v. Avien, Inc.,* 573 F.2d 685, 692 (1st Cir.1978);

---

**6.** "The effect of the PSLRA on the standard for scienter has been much disputed. The Act itself is silent on the general scienter requirements for 10b–5 actions, referring only to scienter as 'the required state of mind.' " *Greebel,* 194 F.3d at 199 (citing 15 U.S.C. § 78u–4(b)(2)). In *Greebel* the First Circuit

agreed with "those courts that hold that the PSLRA did not address the substantive definition of scienter," and thus concluded that "the Act does not alter the preexisting definition of scienter adopted by this circuit ...." *Id.* at 200–01.

*Greebel,* 194 F.3d at 198. Reckless conduct is defined as " 'an extreme departure from the standards of ordinary care ... which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious the actor must have been aware of it.' " *Greebel,* 194 F.3d at 198 (quoting *Sundstrand Corp. v. Sun Chem. Corp.,* 553 F.2d 1033, 1045 (7th Cir.1977)).

The 1997 10–KSB filed with the SEC included an independent auditors' report signed by Trien Rosenberg, which included the following statement:

> We conducted our audits in accordance with generally accepted auditing standards.... In our opinion, the [May 31, 1997] consolidated financial statements [of Metro Global] present fairly, in all material respects, the financial position of Metro Global Media, Inc. and Subsidiaries as of May 31, 1997 ..., and the results of their operations and their cash flows for each of the years in the three-year period ended May 31, 1997, in conformity with generally accepted accounting principles.

The 1998 10–KSB filed with the SEC included an independent auditors' report signed by Trien Rosenberg which contained virtually the same statement of opinion with reference to the 1998 filing.

Despite these declarations, significant discrepancies existed between Metro Global's true financial condition and the one it presented to the world through its filings with the SEC. The extent to which the financial statements were ultimately amended (net income for fiscal year 1997 was overstated by 240% and net income for fiscal year 1998 was overstated by 306%), and the fact that the restatement was based on violations of GAAP and GAAS would seem to indicate a violation of the standards of ordinary care. The First Circuit has allowed that GAAP violations

alone "could provide evidence of scienter." *Greebel,* 194 F.3d at 203.

 Furthermore, Trien Rosenberg's failure to "investigate the doubtful" gives rise to a strong inference of scienter, particularly in light of the magnitude of the accounting error involved. *Rehm v. Eagle Fin., Corp.,* 954 F.Supp. 1246, 1256 (N.D.Ill.1997). "While it is true that the mere fact that a company's financial reporting was inaccurate does not establish scienter, the magnitude of reporting errors may lend weight to allegations of recklessness where defendants were in a position to detect the errors." *Id.* (internal citations omitted); *see also Gelfer v. Pegasystems, Inc.,* 96 F.Supp.2d 10, 16 (D.Mass. 2000) ("The magnitude of the revenue overstatements during the class period also tends to support a strong inference of scienter."); *In re Leslie Fay Cos., Inc. Sec. Lit.,* 835 F.Supp. 167, 175 (S.D.N.Y.1993) (rejecting independent auditor's motion to dismiss where allegations of large accounting errors gave rise to inference of scienter). "The more serious the error, the less believable are defendants [sic] protests that they were completely unaware of [the company's] true financial status and the stronger is the inference that defendants must have known about the discrepancy." *Rehm,* 954 F.Supp. at 1256.

### 3. *Detrimental Reliance Claim*

 Trien Rosenberg alleges that the named plaintiffs' claim of detrimental reliance on the failure to properly account for certain convertible securities in certain Metro Global financial reports is inadequate as a matter of law, based on the timing of certain plaintiffs' purchases of Metro Global stock. Plaintiff George Kinney ("Kinney") purchased Metro Global common stock prior to Metro Global's issuance of the subject convertible debentures. Trien Rosenberg argues that this fact

makes Kinney's allegation that claimed accounting irregularities were connected to his purchase or sale of Metro Global stock meritless. The other four named plaintiffs purchased Metro Global stock after the company publicly announced its intention to restate the first and second quarter financial statements of fiscal 1999 as to the referenced convertible securities. According to Trien Rosenberg, this fact precludes their reliance on the prior accounting for the purchase of those securities.

■■■■■■ This Court finds Trien Rosenberg's arguments to be without merit. Class representatives have standing to assert claims on behalf of the whole class over lengthy class periods, even when the information available to the class changes during the course of the class period. *In re One Bancorp Sec. Litig.*, 136 F.R.D. 526, 531 (D.Me.1991): Furthermore, class representatives may represent later purchasers on claims arising from alleged misstatements made after their purchase or sale if the misstatements were made in furtherance of a "common course" of conduct to defraud. *Priest v. Zayre Corp.*, 118 F.R.D. 552, 557 (D.Mass.1988); *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 311–12 (D.Mass.1987). "Even if there have been some partial corrective disclosures, each named Plaintiff will have an interest in proving that Defendants engaged in a scheme, throughout the class period, to artificially inflate the price of [the] stock." *In re One Bancorp*, 136 F.R.D. at 531.

### B. Motion for Summary Judgment

■■■■ Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c). To be "genuine," the evidence viewed in a light most favorable to the non-moving party "must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.1995).

■■■■ Trien Rosenberg moves for summary judgment on the ground that Plaintiffs' claims are barred by the statute of limitations. The Court notes that Trien Rosenberg has failed to comply with D. R.I. Loc. R. 12.1(a)(1), which requires a moving party to set forth "a concise statement of all material facts as to which he contends there is no genuine issue necessary to be litigated." Nevertheless, on the basis of Defendant's response it appears that there remain genuine issues of fact in dispute as to when precisely Plaintiffs should have been on notice as to Defendant's fraudulent activities. This Court therefore denies the Motion for Summary Judgment.

### III. Conclusion

For the reasons outlined in the text of this memorandum, Trien Rosenberg's Motion to Dismiss is denied and Trien Rosenberg's Motion for Summary Judgment is denied.

SO ORDERED.