Lawrence M. **GREEBEL**, Richard Crane, Brian D. Robinson and John and Ann Somers, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

FTP SOFTWARE INC., Robert W. Goodnow, Jr., Penny C. Leavy, Douglas F. Flood, Jonathan Rodin, Charlotte H. Evans, and David H. Zirkle, Defendants.

Civ. A. No. 96–10544–JLT.

United States District Court,
D. Massachusetts.

Sept. 24, 1998.

Steven Schulman, Ralph M. Stone, Samuel
H. Rudman, Milberg, Weiss, Bershad, Spec-
thrie & Lerach, New York City, David Ber-
shad, Sanford P. Dumain, Milberg, Weiss,
Bershad, Hynes & Lerach, New York City,
Nancy F. Gans, Moulton & Gans, LLP, Ste-
phen Moulton, Moulton & Gans, Boston, MA,
for Plaintiffs.

Peter J. MacDonald, Jeffrey B. Rudman,
Hale & Dorr, Boston, MA, John D. Donovan,
Jr., Michael P. Allen, Ropes & Gray, Boston,
MA, for Defendants.

*MEMORANDUM*

TAURO, Chief Judge.

This class action is brought on behalf of all
who purchased the common stock of Defen-
dant FTP Software, Inc. between July 14,
1995 and January 3, 1996. Plaintiffs allege

that Defendants—FTP Software and several of its officers and directors—engaged in a fraudulent scheme and deceptive course of business that artificially inflated stock prices, thereby injuring Plaintiffs.

Specifically, Plaintiffs aver that Defendants made a number of material misrepresentations and omissions related to both FTP's sales revenues and the impact of Microsoft's Windows '95 on FTP's business. As to sales revenues, Defendants allegedly gave distributor-customers extensive discounts and unlimited rights of return, and then treated those contingent transactions as final sales in violation of Generally Accepted Accounting Principles ("GAAP"). Plaintiffs further aver that Defendants ordered FTP employees to alter, or "white out," sales reports to hide the contingent sales from auditors.[1] Defendants then allegedly used these inflated sales figures to make a series of misleading public statements about FTP's financial condition, including a filing of a Form 10–Q with the SEC.

Regarding Windows '95, Plaintiffs claim that Defendants, in several public statements about the company's health, failed to disclose the inevitable harm that Microsoft's Windows '95—which included a version of FTP's product at no additional charge—would have on FTP's operations.

Plaintiffs allege that individual Defendants profited from their misrepresentations and omissions by selling large blocks of FTP stock at the artificially inflated price. Plaintiffs also claim that Defendants are liable for independent analysts' misleading public predictions about FTP's fiscal health.

At issue are: (1) Defendants' Motion for partial summary judgment on Plaintiffs' claim that Defendants ordered the alteration of FTP records ("white-out claim"); and (2) Defendants' renewed motion to dismiss.

# I.

## PROCEDURAL HISTORY

Plaintiffs filed their original complaint on March 3, 1996. After Plaintiffs twice amended their complaint, the court denied Defendants' Motion to Dismiss.

On March 11, 1997, the court ordered the parties, pursuant to Local Rule 26, to exchange and review all relevant documents and sworn statements by April 22, 1997. On May 1, 1997, following a conference, the court issued an order directing both parties to exchange lists specifying witness names and the issues to which they would testify. At a June 19, 1997 conference, after noting that Plaintiffs had identified a "white-out" witness (Ms. Trudy Nichols) but had not described the witness's expected testimony, the court again ordered Plaintiffs to provide Defendants with a short summary of each witness's testimony.[2] At a July 31, 1997 conference, after questions arose as to the admissibility of Ms. Nichols's prospective testimony, the court suspended further proceedings and ordered Plaintiffs to provide Defendants with information as to Ms. Nichols's whereabouts so that Defendants could depose her.

# II.

## ANALYSIS

A. *Motion for Partial Summary Judgment on the White-out Claim.*

After close to a year of discovery, Defendants have moved for partial summary judgment on Plaintiffs' claim that Defendants ordered FTP employees to alter, or white-out, sales reports. In response to Defendants' motion, Plaintiffs offer two types of "evidence:" (1) the potential hearsay testimony of a single witness—Ms. Nichols—who appears unavailable and/or unwilling to testify in any form; and (2) sales records that do not raise a material issue of fact on the white-out allegations. In addition, Plaintiffs

---

1. Plaintiffs allege that Defendants further improperly inflated sales by granting excessive discounts, making fictitious sales through phantom warehouse shipments, and pulling sales from the future fiscal quarter into the current quarter ("channel stuffing").

2. At the June 19 conference, the court explicitly warned Plaintiffs' counsel that if he failed to produce the witness information, the court would dismiss the case.

argue that they need third-party discovery under Rule 56(f) to rebut the motion. None of these responses saves Plaintiffs from partial summary judgment.

Ms. Nichols's potential testimony does not defeat Defendants' motion, because she is unavailable and her testimony is potentially inadmissible. Despite the court's repeated efforts to force Plaintiffs to aid Defendants in locating Ms. Nichols for deposition,[3] her whereabouts are still unknown. Even if the parties could locate Ms. Nichols, Plaintiffs concede that she appears to be unwilling to testify—in hearing, deposition, or affidavit—about the white-out allegations. Furthermore, even if Ms. Nichols was deposed and supported the white-out allegations, her testimony would likely be ruled as inadmissible hearsay.[4]

In addition to Ms. Nichols's testimony, Plaintiffs also proffer documents discovered in FTP's files over the past year in an effort to rebut Defendants' Partial Summary Judgment Motion. These documents—which allegedly show on their face specific contingent transactions recorded as final sales—do not constitute evidence that Defendants ordered the alteration of documents. The documents, like the Nichols testimony, fail to raise a material issue of fact on the white-out claim.

As a third reply to Defendants' Motion for Partial Summary Judgment, Plaintiffs, invoking Rule 56(f), seek additional, third-party discovery to support the white-out allegations. To qualify for 56(f) discretionary relief from summary judgment, Plaintiffs must, inter alia, "articulate some plausible basis for [their] belief that specified 'discoverable' material facts likely exist." *Paterson–Leitch Co., Inc. v. Massachusetts*

*Munic. Wholesale Elec. Co.*, 840 F.2d 985, 988 (1st Cir.1988). Plaintiffs have made no such showing. Despite repeated requests from the court, Plaintiffs have not produced any competent foundation evidence that a white-out issue exists. At this point, therefore, Plaintiffs have no "plausible basis" to claim that discoverable evidence on the white-out claim likely exists. *Id.*

In light of Plaintiffs inability to provide any evidence to support their white-out claim, and Plaintiffs' failure to show that additional discovery would lead to such evidence, summary judgement is appropriate.

### B. Defendants' Renewed Motion to Dismiss.

Defendants challenge the legal sufficiency of Plaintiffs' remaining claims by renewing their motion to dismiss. At the outset, the court notes that its denial of Defendants' first motion to dismiss does not govern disposition of this renewed motion. In denying the first motion, the court relied heavily on the potential significance of the asserted white-out claim. As that claim has proved factually baseless and appropriate for partial summary judgment, the court considers Defendants' renewed motion to dismiss without regard to the white-out allegations.

### 1. Pleading Standard in Securities Fraud Cases

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4 (1997), has heightened the already-stringent pleading standard for securities fraud claims. Before PSLRA's enactment, Rule 9(b) required Plaintiffs in securities fraud cases to plead "the circumstances constituting fraud . . . with particularity." Fed.R.Civ.P. 9(b).

---

3. As described in the procedural history section, the court discussed Ms. Nichols's testimony with Plaintiffs' counsel in three separate conferences, and ordered Plaintiffs' counsel at the last conference to provide information sufficient to allow Defendants to depose Ms. Nichols.

4. Ms. Nichols purportedly would testify that an unidentified FTP employee told her of the whiting-out. Plaintiffs claim that the testimony is a nonhearsay party admission or falls within the statement against interest exception to the hearsay rule. The testimony does not fit within either

admissible category, however, because the witness's unwillingness to identify the declarant makes impossible an analysis of the factual predicates to either exception. *See, e.g., Vazquez v. Lopez–Rosario*, 134 F.3d 28, 34 (1st Cir.1998) (statements by unidentified employees made to another employee not admissions by party-opponent because, "[a]s the original declarant is unknown, it is impossible to determine whether the original declarant fits within the party-opponent definition").

To satisfy Rule 9(b) in the First Circuit, a complaint had to "set[ ] forth specific facts that ma[de] it reasonable to believe that defendant knew that statement was materially false or misleading." *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1223–24 (1st Cir. 1996) (citing *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir.1992)).

Under PSLRA, a complaint claiming securities fraud must now "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all the facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Additionally, when scienter is at issue, the complaint must "state with particularity facts giving rise to a strong inference that the declarant acted with the requisite state of mind." *Id.* at § 78u–4(b)(2).

### 2. *Failure to Plead Circumstances of Fraud*

█ The majority of Plaintiffs' claims fail to plead the circumstances of fraud with requisite specificity. To begin with, Plaintiffs' fraud claims against all individual Defendants fail to allege, with sufficient particularity, the role each Defendant played in the fraud. *Loan v. FDIC*, 717 F.Supp. 964, 968 (D.Mass.1989) ("Where multiple defendants are involved, each person's role in the alleged fraud must be particularized" to satisfy pre-PSLRA, Rule 9(b) pleading standard.). Plaintiffs do not allege that any individual Defendants, other than Defendant Zirkle, made or endorsed any of the challenged statements. In addition, Plaintiffs do not aver with particularity (1) how any of the individual Defendants knew facts sufficient to determine that such statements were false; or (2) that any of the individual Defendants, other than Zirkle, even knew that the challenged statements were made. Rather, Plaintiffs aver generally that Defendants, solely by virtue of their positions at FTP, should collectively be presumed to have participated in the dissemination of alleged falsehoods. Such generalized allegations do not satisfy Rule 9(b) or PSLRA. *Id.* (dismissing claims which did not allege that defendants prepared, signed or even read allegedly misleading written subscription offering circular).

Plaintiffs' claims against all Defendants (both individuals and FTP) based on alleged artificial inflation of sales figures also fail to pass 9(b) muster. Under First Circuit precedent, " 'a general allegation that the practices at issue resulted in a false report of company earnings is not a sufficiently particular claim of misrepresentation [to satisfy Rule 9(b) ].' " *Gross v. Summa Four, Inc.*, 93 F.3d 987, 996 (1st Cir.1996) (quoting *Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 362 n. 5 (1st Cir.1994)). Plaintiffs' complaint—which does not describe specific contingent transactions, or those transactions' effect on FTP's earnings per share—is too general to satisfy 9(b) or PSLRA. *See id.* (dismissing claims under Rule 9(b) where plaintiff (1) failed to allege particulars to support general allegations of inflated earnings through the use of improper accounting methods; and (2) specifically failed to allege the amount of the putative overstatement or the net effect it had on the company's earnings).

Similarly, Plaintiffs claim that Defendants are liable for analysts' allegedly misleading statements does not sufficiently plead the circumstances of fraud. Plaintiffs claim that unidentified members of FTP's management communicated with certain analysts.[5] Such bald assertions, without specific factual support, do not satisfy Rule 9(b) or the PSLRA. *See, e.g., Colby v. Hologic*, 817 F.Supp. 204, 215 (D.Mass.1993) (dismissing, under 9(b), "vague claims of misleading company 'guidance' which [were] entirely unspecified as to 'time, place, or content' of the acts of the individual defendants in leading the analysts astray").

---

**5.** Plaintiffs also seek to impose liability on Defendants for analysts' reports because those reports were allegedly based on Defendants' own public misrepresentations and omissions. But, Plaintiffs do not plead particular facts sufficient to state a claim against Defendants for their own misrepresentations or omissions. Defendants cannot be liable for analysts statements that relied on those innocuous Defendant statements or omissions.

### 3. Failure to Plead Scienter

Plaintiffs' entire complaint stumbles over PSLRA's separate pleading requirement for scienter. As noted above, PSLRA raised the First Circuit's pleading standard for scienter from a "reasonable belief" to a "strong inference" of scienter standard. *Compare Shaw,* 82 F.3d at 1223–24 (discussing pre-PSLRA "reasonable belief" standard) *with* 15 U.S.C. § 78u–4(b)(2) (requiring plaintiff to "state with particularity facts giving rise to a strong inference of the required state of mind"). The *precise* degree to which the strong inference standard heightens the reasonable belief standard is unclear.[6] The court need not address that issue at this time, however, because Plaintiffs have failed to satisfy even the First Circuit's less-stringent, pre-PSLRA 9(b) standard.

■ Plaintiffs argue that Defendants' alleged GAAP violations sufficiently plead an intent to defraud. Plaintiffs' argument is correct in one sense: a *particularized* claim of GAAP violations would likely have satisfied the pre-PSLRA pleading requirements for scienter. *See, e.g., Malone v. Microdyne Corp.,* 26 F.3d 471, 478 (4th Cir.1994) ("We cannot find a single precedent ... holding that a company may violate [GAAP] and substantially overstate its revenues by reporting consignment transactions as sales without running afoul of Rule 105–b."). Plaintiffs are incorrect, however, in their application of that rule to their complaint. Plaintiffs' generalized allegations of GAAP violations do not satisfy pre-PLSRA scienter pleading requirements. *See Gross,* 93 F.3d at 996 ("[A] general allegation that the practices at issue resulted in a false report of company earnings is not a sufficiently particular claim of misrepresentation [to satisfy Rule 9(b) ].") (citation omitted).

■ Alternatively, Plaintiffs argue that they sufficiently pleaded scienter by alleging that individual Defendants sold large blocks of stock during the class period. Again, Plaintiffs are correct about a basic proposition of pre-PSLRA law, but incorrect in its application. Adequate allegation of insider sales in large or suspicious amounts would likely have established motive sufficient to satisfy pre-PSLRA's pleading requirement for scienter. *See, e.g., Greenstone v. Cambex Corp.,* 975 F.2d 22, 26 (1st Cir.1992) (observing that "insider trading in suspicious amounts or at suspicious times, of course, could help" satisfy Rule 9(b)).[7] Plaintiffs, however, fail to plead the amount of trading normally conducted by individual Defendants. This pleading deficiency prevents the court from determining whether the class period sales were extraordinary, and thus indicative of motive. *See In re Chipcom Corp. Sec. Litig.,* No. 95–11114, slip op. at 36 (D.Mass. Apr. 29, 1996) (holding, inter alia, that failure to plead the amount of trading normally done by individual defendants precluded motive-based inference of scienter).

Because their complaint does not satisfy the First Circuit's less stringent, pre-PSLRA pleading requirements for scienter, Plaintiffs fail to clear the PSLRA's "strong inference" hurdle.

### 4. 20(a) Claim

Plaintiffs allege that individual Defendants are liable as "controlling persons" of FTP

---

6. Courts are split on this issue. Some courts have held that the PSLRA merely codifies the Second Circuit's two-pronged, pre-PSLRA scienter standard. *See, e.g., Rehm v. Eagle Finance Corp.,* 954 F.Supp. 1246 (N.D.Ill.1997); *Marksman Partners, L.P. v. Chantal Pharmaceutical Corp.,* 927 F.Supp. 1297, 1311–13 (C.D.Cal. 1996). Under that interpretation, a plaintiff pleads scienter with sufficient particularity by alleging facts that establish either (1) both a motive and an opportunity to commit fraud; or (2) circumstantial evidence of either conscious misbehavior or recklessness. *Friedberg v. Discreet Logic, Inc.,* 959 F.Supp. 42, 48 (D.Mass. 1997).

Other courts, including one in this district (Harrington, J.), have held that PSLRA adopts a more stringent standard than the pre-PSLRA, Second Circuit approach. *See, e.g., Discreet Logic,* 959 F.Supp. at 48–49 (PSLRA requires Plaintiffs to plead facts showing "circumstantial evidence of conscious behavior."); *In re Silicon Graphics, Inc. Sec. Litig.,* 970 F.Supp. 746, 757 (N.D.Cal.1997) ("[M]otive, opportunity, and nondeliberate recklessness may provide some evidence of intentional wrongdoing, but are not alone sufficient" to satisfy PSLRA.).

7. Some courts have held that motive does not satisfy PSLRA's heightened "strong inference" pleading standard. *See supra* note 6 (discussing split among courts as to precise degree to which PSLRA heightens Rule 9(b)'s scienter pleading requirement).

under Section 20(a) of the 1934 Act. 15 U.S.C. § 78(t). Because Plaintiffs have not adequately pleaded a primary securities violation by Defendant FTP, Plaintiffs' Section 20(a) claim must be dismissed. *See, e.g., Berliner v. Lotus Development Corp.,* 783 F.Supp. 708, 712 (D.Mass.1992) (dismissing 20(a) claim upon dismissal of 10(b) claim).

### 5. *Dismissal with Prejudice*

■ Although Plaintiffs have not requested leave to amend their complaint, they have sought to introduce evidence taken from Defendant FTP's files during discovery to oppose Defendants' motion to dismiss.[8] The court has not considered this evidence in analyzing the motion to dismiss. In addition, the court will not allow Plaintiffs leave to amend their complaint for the third time.

Plaintiffs would not have discovered the additional evidence but for the inclusion of the white-out claim, which saved Plaintiffs from earlier dismissal, and has since turned out to be groundless. To allow Plaintiffs to amend at this point would fly in the face of PSLRA and the First Circuit's pre-PSLRA pleading standard. The new law requires Plaintiffs to plead particular facts sufficient to show their case has merit *before* gaining unfettered access to Defendants' files. Plaintiffs have failed to do so. Their suit shall be dismissed with prejudice.

### III.

### *CONCLUSION*

For the foregone reasons, the court ALLOWS Defendants' motion for partial summary judgment on the white out claims, and ALLOWS Defendants' renewed motion to dismiss Plaintiffs' remaining claims.

AN ORDER WILL ISSUE.

---

**8.** As Defendants observe, Plaintiffs violated Local Rule 7.1(B)(2) when they presented many of these additional facts to the court after the opposition period had ended, without leave of court.