In re ART TECHNOLOGY GROUP,
INC. SECURITIES
LITIGATION

No. CIV.A. 01–11731–NG.

United States District Court,
D. Massachusetts.

Sept. 24, 2005.

tion thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).

Michael D. Braun, Stull, Stull & Brody, Los Angeles, CA, for Kalman Low, Mike Low, Willis Kurtz, Ellis Enterprises Ltd., Ahmad Khatib, Allen Joel Breiner, Kalman Low, Michael Low, Willis O. Kurtz, and Ahmad Khatib, Plaintiffs.

Timothy J. Burke, Stull, Stull & Brody, Los Angeles, CA, for Ellis Enterprises Ltd., Ahmad Khatib, Allen Joel Breiner, Kalman Low, Mike Low, Willis Kurtz, the Low Group, Plaintiffs.

Michael S. Egan, Bernstein Liebhard & Lifshitz, New York, NY, for Ellis Enterprises Ltd., Plaintiff.

Brian M. Felgoise, Jenkintown, PA, for Allen Joel Breiner, Plaintiff.

Nancy F. Gans, Moulton & Gans, PC, Boston, for Allen Joel Breiner, Martha Turner, Thomas A. Turner, III, Plaintiffs.

Paul J. Geller, Cauley Geller Bowman & Rudman LLP, Raton, FL, for Allen Joel Breiner, Plaintiff.

Marc L. Godino, Stull, Stull & Brody, Los Angeles, CA, for Kalman Low, Mike Low, Willis Kurtz, Plaintiffs.

Theodore M. Hess–Mahan, Shapiro Haber & Urmy LLP, Boston, for Kalman Low, Mike Low, William H. Bolton, Willis Kurtz, the Low Group, Plaintiffs.

Fred Taylor Isquith, Wolf, Haldenstein, Adler, Freeman & Herz, New York, NY, for Martha Turner, Thomas A. Turner, III, Plaintiffs.

David C. Katz, Weiss & Lurie, New York, NY, for the Low Group, George Murphy, Kalman Low, Mike Low, William H. Bolton, Willis Kurtz, Plaintiffs.

Jordan L. Lurie, Weiss & Lurie, New York, NY, for the Low Group, Plaintiffs.

Gregory M. Nespole, Wolf, Haldenstein, Adler, Freeman & Herz LLP, New York, NY, for Martha Turner, Thomas A. Turner, III, Plaintiffs.

Douglas M. Risen, Sherrie R. Savett, Berger & Montague, P.C., Philadelphia, PA, for William H. Bolton, Plaintiff.

Steven G. Schulman, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY, Evan J. Smith, Brodsky & Smith LLC, Bala Cynwyd, PA, Marc A. Topaz, Schiffrin & Barroway, LLP, Bala Cynwyd, PA, Samuel H. Rudman, David A. Rosenfeld, Cauley, Geller, Bowman, Coates & Rudman, LLP, Melville, NY, for Allen Joel Breiner, Plaintiff.

Thomas G. Shapiro, Shapiro Haber & Urmy LLP, Boston, for Kalman Low, Mike Low, William H. Bolton, Willis Kurtz, Plaintiffs.

Patrick K. Slyne, Stull, Stull & Brody, New York, NY, for George Murphy, Kalman Low, Mike Low, William H. Bolton, Willis Kurtz, Plaintiffs.

Lynne C. Soutter, Hale & Dorr LLP., Boston, MA, Matthew A. Stowe, Nancy Margaret Gorton, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, William H. Paine, Jeffrey B. Rudman, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, Dyan Finguerra–DeCharme, Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY, Mary Jo Johnson, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, for Art Technology Group, Inc., Jeet Singh, Joseph T. Chung, Defendants.

Thomas V. Urmy, Jr., Shapiro Haber & Urmy LLP, Boston, for George Murphy, Plaintiff.

## REPORT AND RECOMMENDATION ON DEFENDANTS' RENEWED MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT, AND ORDER ON PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

DEIN, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiffs Willis Kurtz, Kalman Low and Mike Low bring this class action on behalf of themselves and all others who purchased the common stock of defendant Art Technology Group, Inc. ("ATG") from January 25, 2001 to April 2, 2001 (the "Class Period"). They claim that ATG and its two founders, defendants Mahendrajeet Singh ("Singh") and Joseph Chung ("Chung"), are liable for securities fraud, pursuant to section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, as a result of false and misleading statements that they made concerning ATG's business. The plaintiffs further claim that Singh and Chung are liable, pursuant to section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), as "controlling persons" of ATG.

Previously, the defendants had moved to dismiss the Consolidated Amended Complaint for the Violation of the Federal Securities Laws ("Complaint") (Docket No. 12) on the grounds that none of the allegedly misleading statements that the plaintiffs had described in the Complaint were actionable. On September 4, 2003, the District Judge (Gertner, J.) issued a Memorandum and Order ("Order") granting in part and denying in part the defendants' motion. (Docket No. 27). The Court ruled that none of the statements that the plaintiffs had identified as misleading were actionable *except* for Singh's January 25,

2001 remark that "the rapid acceptance of our newest product offering, ATG Dynamo 5, in this market [was] very encouraging." (*See* Order at 16, 24–25; Compl. ¶ 25). The court found that this statement might be false and misleading because, as alleged in the Complaint, "[t]he Company's latest edition of their flagship product, Dynamo 5.1, which had been first shipped to ATG's customers in third quarter 2000, *was not 100% J2EE compatible as advertised.*" (Order at 16–17 (quoting Compl. at ¶ 23) (emphasis added)). "This problem caused customers to hold off purchasing Dynamo 5.1, resulting in further deterioration of quarterly revenues." (Compl.¶ 23). Therefore, the plaintiffs alleged, customers were not accepting the newest product offering and this was known to Singh at the time he made the statement to the contrary. As the District Judge found, this satisfied the scienter requirement. (Order at 24).

As further alleged in the Complaint, and confirmed by later discovery, the plaintiffs' position, based "on information and belief," is that ATG's Dynamo 5 product was not J2EE compatible because "one of the major J2EE features, transaction phase two commit, was faked in the implementation of Dynamo 5.1." (Compl. ¶ 28; *see also* Compl. ¶ 37(a)). However, it is now undisputed that transaction phase two commit was not a requirement for J2EE compatibility at the time the statement was made. Therefore, the alleged absence of phase two commit capabilities (which is in dispute) did not render the Dynamo 5.1 unable to satisfy the J2EE requirements, and did not render Singh's statement false and misleading.

The matter is presently before the court on the defendants' renewed motion to dismiss and motion for summary judgment. (Docket No. 58). Because the undisputed facts establish that plaintiffs' allegation, made originally "upon information and belief," that the Dynamo 5.1 was not J2EE compatible because it lacked phase two commit is wrong, this court recommends to the District Judge to whom this case is assigned that the defendants' motion be ALLOWED.

This matter is also before the court on the plaintiffs' motion to compel the production of documents. (Docket No. 75). None of the requested information is relevant to the controlling fact, whether J2EE compatibility required transaction phase two commit capabilities. Consequently, and because this court recommends that the complaint be dismissed, the motion to compel is DENIED.

## II. STATEMENT OF FACTS

The defendant ATG is a leading provider of online customer relationship management and electronic commerce software and services. (Compl.¶ 14). The company offers its customers an integrated suite of Java application server-based products, as well as related application development, integration and support services. (*Id.* ¶¶ 2, 14). ATG's flagship products are its Dynamo e-Business Platform products, which enable Global 2000 enterprises and new businesses using the internet as their primary business channel to understand, manage and build their online customer relationships. (*Id.* ¶¶ 14, 37). They also enable ATG's customers to more effectively market, sell and support their own products and services over the internet. (*Id.* ¶ 14).

The individual defendants, Singh and Chung, co-founded ATG in 1991. (*Id.* ¶ 16). At all relevant times, Singh was the Chief Executive Officer of ATG and a member of its Board of Directors. (*Id.* ¶ 15). Chung was ATG's Chief Technology Officer and Treasurer, as well as the Chairman of its Board of Directors. (*Id.*

¶ 16). Because of their positions with the company, Singh and Chung had the authority and ability to control the content of information that ATG disseminated to the investing public. (*Id.* ¶ 19).

The plaintiffs contend that the defendants were responsible for disseminating false information to the public that exaggerated ATG's business prospects, encouraged investors to purchase ATG's stock at artificially inflated prices, and caused the plaintiffs to incur losses when the company ultimately disclosed that its earnings would fall well below expectations and its stock price plummeted. (Compl., generally). In support of their claims, the plaintiffs provided details of various allegedly misleading statements that ATG, Singh and certain Wall Street securities analysts had made during the Class Period. However, in her Order on the defendants' April 2002 motion to dismiss, the District Judge (Gertner, J.) ruled that only one of these allegedly false and misleading statements is actionable under the applicable securities laws. (*See* Order at 24–25). That statement, which Singh made on January 25, 2001 at the start of the Class Period, concerns ATG's newest Dynamo product. (*See* Compl. ¶ 25). Specifically, the statement found actionable was that "the rapid acceptance of our newest product offering, ATG Dynamo 5, in this market [was] very encouraging." (Compl. ¶ 25; Order at 16).

The plaintiffs further allege, "on information and belief," that Singh's statement was false and misleading at the time it was made because the defendants knew or were reckless in not knowing that "although ATG's Dynamo 5 product was touted as being Java 2 Enterprise Edition ['J2EE'] compliant and certified, one of the major J2EE features, transaction phase two commit, was faked in the implementation of Dynamo 5.1." (Compl. ¶ 28). According to the plaintiffs, the fact that the latest edition of ATG's flagship product was not one hundred percent J2EE compatible as advertised, resulted "in ATG's customers' wide-spread refusal to upgrade." (Compl. ¶ 37a). The allegations indicate, therefore, that there was no rapid acceptance of the new Dynamo product as Singh had announced publicly.

Since the original motion to dismiss was decided, the plaintiffs have conceded, both in their brief in opposition to the defendant's motion and at oral argument, that two phase commit capability, in fact, was unnecessary to obtain J2EE compliance at the time that Singh made his statement. (*See* Pls.' Mem. (Docket No. 66) at 4). At most, two phase commit was being proposed as a J2EE requirement at the time of Singh's statement, but it had not been adopted. (*See* Pls.' Mem. at 4). Thus, assuming that the Dynamo 5.1 did not have two phase commit capabilities, that absence would not have prevented it from being J2EE compliant.

## III. ANALYSIS

### A. Standard of Review

#### 1. The PSLRA and Motion to Dismiss

In 1995, Congress enacted the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4, which marked an effort to curb abuse in private securities lawsuits. *See Greebel v. FTP Software, Inc.,* 194 F.3d 185, 191 (1st Cir. 1999). The PSLRA established strict pleading standards for such lawsuits, which are consistent with the First Circuit's preexisting standards for pleading securities fraud under Fed.R.Civ.P. 9(b). *See id.* at 193. Of significance to the present motion is the PSLRA's mandate that a complaint claiming securities fraud based on misstatements or omissions set forth "each statement alleged to have been

misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). "[T]o satisfy this provision, a complaint 'must provide factual support for the claim that the statements or omissions were fraudulent, that is, facts that show exactly why the statements or omissions were misleading.'" *In re Stone & Webster, Inc. Sec. Litig.*, 414 F.3d 187, 194 (1st Cir.2005) (quoting *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 78 (1st Cir. 2002)). "If the plaintiff brings his claims on information and belief, he must 'set forth the source of the information and the reasons for the belief.'" *Aldridge*, 284 F.3d at 78 (quoting *Greebel*, 194 F.3d at 194). "The plaintiff need not, however, go so far as to 'plead evidence.'" *Stone & Webster*, 414 F.3d at 195.

■ Although the pleading requirements in private securities fraud cases are rigorous, "they do not change the standard of review for a motion to dismiss." *Aldridge*, 284 F.3d at 78. Accordingly, the court must view the factual allegations contained in the Complaint in the light most favorable to the plaintiffs, and may grant dismissal "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). While the court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs," *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993), it "need not credit a complaint's bald assertions or legal conclusions." *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir.

1996) (internal quotations and citation omitted).

### 2. *Summary Judgment*

As part of their motion, the defendants have moved for summary judgment on the grounds that "the undisputed facts establish that two phase commit was not required for J2EE certification" (Def. Mem. (Docket No. 59) at 13) and "the undisputed facts demonstrate that ATG did not 'fake' XA functionality." (Def. Mem. at 15). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

It is not disputed that two phase commit was not required for J2EE certification and summary judgment is therefore appropriate as to that allegation. With respect to the defendants' other claim, however, it is premature. In this court's view, additional discovery would be appropriate before this court could determine whether the record supports the allegation that ATG "faked" XA functionality. *See Carmona v. Toledo*, 215 F.3d 124, 133 (1st Cir.2000) (where "plaintiffs' case turns so largely on their ability to secure evidence within the possession of defendants, courts should not render summary judgment because of gaps in a plaintiff's proof without first determining that plaintiff has had a fair chance to obtain necessary and available evidence from the other party.").

As detailed in the plaintiffs' motion to compel, the defendants have produced very little discovery. The defendants, in response, contend that they have already expended considerable amounts in locating the requested information, and its production would be even more costly. Since, as

detailed below, the Complaint does not survive the defendants' renewed motion to dismiss on the basis of the two-phase commit issue, this court will not address the defendants' alternative grounds for summary judgment. *See Greebel v. FTP Software, Inc.*, 182 F.R.D. 370, 376 (D.Mass. 1998) (under the PSLRA, plaintiff must "plead particular facts sufficient to show their case has merit *before* gaining unfettered access to Defendants' files"), *aff'd*, 194 F.3d 185 (1st Cir.1999).

### 3. *Renewed Motion to Dismiss*

 The plaintiffs object to the defendants' "renewal" of their motion to dismiss. However, "[i]nterlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case." *In re Cabletron Systems, Inc.*, 311 F.3d 11, 21–22 n. 2 (1st Cir.2002) (quoting *Perez–Ruiz v. Crespo–Guillen*, 25 F.3d 40, 42 (1st Cir. 1994)). Moreover, the fact that discovery has taken place does not prevent the court's consideration of a motion to dismiss. Rather, "the difference in discovery is relevant to a court's evaluation of sufficient particularity" under the PSLRA. *Cabletron*, 311 F.3d at 11. The court "will scrutinize a post-discovery motion to dismiss even more stringently than a pre-discovery motion." *Id.*

In the instant case, the first motion to dismiss resulted in only a very finite claim remaining. The court, while ruling on the first motion, recognized that there was some ambiguity in the remaining statement, making dismissal inappropriate at the time. *See* Order at 17 ("Until some greater clarity emerges to distinguish Dynamo 5, described by Singh as well-received, from the product that the complaint identifies as flawed and rejected by ATG's customer base, I am reluctant to rule out Singh's statement as not actionable."). While discovery may not have produced clarity as to the precise question raised by the District Judge, it has clarified the "flaw" identified by the plaintiffs and, as detailed below, established that no such flaw existed. Under such circumstances, reconsideration of a motion to dismiss is appropriate.

This is the procedure followed by the District Court in *Greebel v. FTP Software, Inc.*, 182 F.R.D. 370 (D.Mass.1998). There, Judge Tauro reviewed a complaint in a securities class action lawsuit in which allegations were made that employees were ordered to "alter" or "white-out" sales reports as part of a "fraudulent scheme and deceptive course of business that artificially inflated stock prices[.]" *Id.* at 371. After almost a year of discovery, the defendants moved for partial summary judgment on the "white-out" claim, which motion was allowed. *Id.* at 372–73. The court then reviewed the sufficiency of the complaint under the PSLRA. As Judge Tauro ruled, "[i]n denying the first motion, the court relied heavily on the potential significance of the asserted white-out claim. As that claim has proved factually baseless and appropriate for partial summary judgment, the court considers Defendants' renewed motion to dismiss without regard to the white-out allegations." *Id.* at 373.

In the instant case, the District Court also relied on a factual allegation in connection with the original motion to dismiss which discovery has proved to be without support. Under such circumstances, consideration of a renewed motion to dismiss is appropriate.

### B. *Overview of Plaintiffs' Claims*

 In Count I of the Complaint, the plaintiffs allege that the defendants violated section 10(b) of the Exchange Act and

Rule 10b–5 promulgated thereunder [1] by making an untrue statement of material fact regarding ATG and failing to disclose material information necessary to make the statement not misleading. In Count II of the Complaint, the plaintiffs assert that defendants Singh and Chung are liable as "controlling persons" under section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).[2] In order to state a claim under Section 10(b) and Rule 10b–5 based on misrepresentations and omissions, the plaintiffs must plead and prove "(1) that defendants made a materially false or misleading statement or omitted to state a material fact necessary to make a statement not misleading; (2) that defendants acted with [a particular state of mind known as] scienter; (3) that either plaintiffs or the market relied on the misrepresentation or omission; and (4) resultant injury." *Geffon v. Micrion Corp.*, 249 F.3d 29, 34 (1st Cir.2001). In order to establish control person liability, the plaintiffs must allege and prove (i) an underlying violation by a controlled person or entity, and (ii) control over the primary violator by the defendants. *See Stone & Webster*, 414 F.3d at 194. Accordingly, the plaintiffs' ability to maintain their claims depends upon the sufficiency of their allegations that Singh's January 25, 2001 statement was false and misleading.

## C. *Sufficiency of the Pleadings*

■ It is undisputed that two phase commit functionality was not a feature of J2EE compliance, much less a major feature as plaintiffs have alleged. Therefore, the complaint must be reviewed in a new light. *See Greebel*, 182 F.R.D. at 373. Since there are no other factual allegations as to why Singh's statement was false and misleading, the motion to dismiss as to the remaining statement should be allowed. *See Stone & Webster*, 414 F.3d at 194.

■ Moreover, all of the allegations are made upon information and belief. (*See, e.g.,* ¶ 28 ("Lead Plaintiffs allege, on behalf of themselves and the Class, on information and belief, that these statements were false and misleading at the time they were made because defendants knew or were reckless in not knowing the following ...."); *accord* ¶ 37a). Where, as here, the complaint fails to "set forth the source of the information and the reasons for the belief," the complaint must be

---

1. Section 10(b) of the Exchange Act makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Rule 10b–5 states: "[i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5.

2. Section 20(a) of the Exchange Act provides, "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a).

dismissed. *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 878 (1st Cir.1991). *Accord Lirette v. Shiva Corp.,* 27 F.Supp.2d 268, 276 (D.Mass.1998). For this reason as well, the defendants' motion to dismiss or, in the alternative, for summary judgment, should be allowed.

## IV. CONCLUSION

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the defendants' Renewed Motion to Dismiss and Motion for Summary Judgment (Docket No. 58) be ALLOWED.[3] The plaintiffs' Motion to Compel the Production of Documents (Docket No. 75) is denied without prejudice as moot.

---

**3.** The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See* *Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).